**Irene M. DINOLFO, Plaintiff,**

v.

**ROCHESTER TELEPHONE CORP., Defendant.**

No. 95–CV–6031L.

United States District Court,
W.D. New York.

July 25, 1997.

---

Donna Marianetti, Gallo & Iacovangelo, Rochester, NY, for Plaintiff.

T. Andrew Brown, Brown and Hutchinson, Rochester, NY, for Defendant.

## DECISION AND ORDER

LARIMER, Chief Judge.

Plaintiff, Irene M. Dinolfo, commenced this action under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, the Civil Rights Act of 1991, Pub.L. No. 102–166, 105 Stat. 1071 (1991), the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq.*, and the Equal Pay Act ("EPA"), 29 U.S.C. § 206(d). Plaintiff also asserts a claim under the New York Human Rights Law ("H.L."), N.Y. Exec. L. § 296. Plaintiff alleges that defendant, Rochester Telephone Corporation ("RTC"), has discriminated against her on account of her sex and her age, and that defendant has retaliated against her for having complained about that discrimination. Defendant has moved for summary judgment.[1]

## FACTUAL BACKGROUND

The facts as alleged in the complaint are as follows. Plaintiff, who was born in July 1946, was hired by RTC in December 1987 with the job title of Product Coordinator II. From the beginning of her employment with RTC, plaintiff has received less pay than male employees performing the same duties as plaintiff.

Around December 1993, at which time plaintiff held the position of Channel Consultant Level II[2], RTC began discriminating against plaintiff on account of her age. Her supervisor, Daniel Lazarek, called her into a meeting and informed plaintiff that she was not competent and that she lacked the necessary skills to perform her job. Although plaintiff pointed out to Lazarek that she had always received favorable performance reviews, he made clear to her that she would be terminated unless she left his department. Plaintiff subsequently left Lazarek's department and took a technical position in another department. Plaintiff's Channel Consultant II position was filled by a 32–year–old woman.

In February 1994, Lazarek gave plaintiff an unfavorable performance evaluation for 1993. This prompted plaintiff to complain to senior management that she was being discriminated against on account of her age and sex. Defendant did little or nothing in response to her complaints. In addition, plaintiff's requests to transfer to certain other positions for which she was qualified were denied, allegedly in retaliation for her complaints. Plaintiff also alleges that at some point after she made those complaints, RTC "sabotaged" her attempt to secure employment with another employer, and that RTC tried to coerce her into withdrawing a discrimination complaint that she had filed with the Equal Employment Opportunity Commission ("EEOC") in June 1994.

About four months after plaintiff filed her EEOC charge, she was officially reinstated to the position of Marketing Manager. Plaintiff alleges, however, that the position was "essentially downgraded" because she no longer has as much authority as she did before. Complaint ¶ 44.

Based on these allegations, plaintiff seeks: an award of back pay, front pay and lost benefits; compensatory and punitive damages; an order directing RTC to implement an affirmative action program; and attorney's fees.

---

1. One procedural matter should be addressed at the outset. Both sides submitted, without prior approval of the court, briefs in excess of the page limits under Local Rule 7.1(f). On June 24, 1997, the court wrote to counsel and directed them to show cause in writing why it was necessary to file briefs of such length. Both counsel have responded, and after reviewing their responses, the court will accept the briefs as filed.

2. The parties refer to this position both as "Marketing Manager" and as "Channel Consultant II," and at least for purposes of this motion there does not appear to be any dispute that both titles refer to the same position.

## DISCUSSION

### I. Equal Pay Claim

 To state an equal pay claim under the EPA or Title VII, plaintiff must show that: "i) [her] employer pays different wages to employees of the opposite sex; ii) the employees perform equal work on jobs requiring equal skill, effort, and responsibility; and iii) the jobs are performed under similar working conditions." *See Tomka v. Seiler Corp.*, 66 F.3d 1295, 1310 (2d Cir.1995). Equal pay claims are generally analyzed according to the same standards under both the EPA and Title VII, although to succeed on a Title VII claim, the plaintiff must also produce evidence of a discriminatory animus. *Id.* at 1312–13. Once a plaintiff has made out a prima facie case, the burden of persuasion shifts to the employer to prove that the pay disparity is justified by one of four enumerated affirmative defenses. 29 U.S.C. § 206(d)(1); *Holt v. KMI–Continental, Inc.*, 95 F.3d 123, 132 (2d Cir.1996), *cert. denied*, —— U.S. ——, 117 S.Ct. 1819, 137 L.Ed.2d 1027 (1997); *Tomka*, 66 F.3d at 1310.

Defendant contends that plaintiff has failed to make out a prima facie case on her equal pay claim. Defendant maintains that the record shows that plaintiff either complained to her supervisors that her pay was inadequate without regard to anyone else's pay, or that she complained of a disparity between her pay and that of her "peers," both male and female. With respect to the male employees that plaintiff has identified, RTC contends that plaintiff has not presented any reliable evidence, aside from her own conclusory assertions that are not based on her personal knowledge, that their job duties were substantially equal to hers. Defendant asserts that the only competent evidence shows that the duties of these men were substantially different from plaintiff's.

 Defendant further contends that even if plaintiff could make out a prima facie case, she cannot overcome RTC's showing that the pay differential was based on a factor other than sex, which is one of the four affirmative defenses listed in 29 U.S.C. § 206(d)(1). An employer asserting that affirmative defense must additionally prove that the gender-neutral factor was adopted for a legitimate business reason. *Tomka*, 66 F.3d at 1310.

RTC contends that although some male employees whom plaintiff has identified had salaries higher than hers, that was the result of salary negotiations between those employees and RTC. RTC contends that it agreed to pay those higher salaries because those male employees had significant work experience and strong academic credentials that were very attractive to RTC at the time they were hired.

In response, plaintiff states that she is seeking recovery only for the alleged disparity in her pay during the period in which she worked as a Channel Consultant II under Lazarek, which lasted from July 1993 until around the beginning of 1994. During that period, she alleges that two particular men, Ted Brewer and Rick Castle, had the same job title as plaintiff, but earned a higher salary.

RTC admits that Brewer and Castle had annual salaries of $60,000 and $52,000 respectively at the time of their hires, while plaintiff's salary at the same time was $48,000. However, defendant contends that their higher salaries were justified because of their educational backgrounds and extensive relevant work experience. Defendant notes that Brewer and Castle both held M.B.A. degrees, whereas plaintiff's highest-level degree was a bachelor of arts degree. Defendant also contends that Brewer's and Castle's positions were not substantially similar to plaintiff's because their job responsibilities were different from plaintiff's.

 After reviewing the record and drawing all inferences in favor of plaintiff, I find that she has not established a prima facie case on her equal-pay claim. Although there may have been some similarities between her duties and those of Brewer and Castle, "jobs which are 'merely comparable' are insufficient to satisfy a plaintiff's prima facie burden." *Tomka*, 66 F.3d at 1310. Instead, the two positions must be "substantially equal." *Lambert v. Genesee Hosp.*, 10 F.3d 46, 56 (2d Cir.1993), *cert. denied*, 511 U.S. 1052, 114 S.Ct. 1612, 128 L.Ed.2d 339

(1994). Although "the test is one of substantiality, not entirety, ... in EPA cases '[t]he standard for determining whether jobs are equal in terms of skill, effort, and responsibility is high.'" *Mulhall v. Advance Security, Inc.,* 19 F.3d 586, 592 (11th Cir.) (quoting *Waters v. Turner, Wood & Smith Ins. Agency, Inc.,* 874 F.2d 797, 799 (11th Cir.1989)), *cert. denied,* 513 U.S. 919, 115 S.Ct. 298, 130 L.Ed.2d 212 (1994). Plaintiff has not met her burden of showing substantial equality.

■ In support of her claim, plaintiff asserts that she, Brewer and Castle had the same job title: Channel Consultant II. However, "the standard under the Equal Pay Act is job content and not job description." *Tomka,* 66 F.3d at 1310.

The record does contain evidence that Brewer's and Castle's duties were different from plaintiff's. For example, plaintiff herself testified at her deposition about their different responsibilities. She answered affirmatively when asked whether she was given the responsibility of "creat[ing] an internal communications process for employees" and "for external communications for all products." Plaintiff's Depo. (T. Andrew Brown Affirmation Ex. C) at 126. When asked whether Brewer and Castle were "also responsible for creating an internal communications process," she replied, "No, they were not." *Id.* With respect to external communications, she stated that Brewer and Castle "were responsible for the concept, the strategies and target market, but I would be responsible for executing them with the advertising agencies." *Id.* She stated that Brewer and Castle would determine "what the audience was, what the budget would be," and that it was her "responsibility to work with the advertising agency toward making the actual commercial shoot, locations, the editing in the editing room." *Id.* at 126–27. Defense counsel then asked her, "So you had different roles?," to which plaintiff responded, "Yes." *Id.* at 127.

Plaintiff contends that in addition to implementing the strategies devised by Brewer and Castle, she was also responsible for developing marketing strategies for the health care market. She claims that this was similar to Brewer's and Castle's responsibilities for the residential services market and the small business and alternate channels market, respectively. Defendant denies that plaintiff was responsible for the health care market in the same way that Brewer and Castle were responsible for their market segments.

Even assuming the accuracy of plaintiff's allegation in this regard, however, it is clear that her position was not substantially equal to Brewer's and Castle's. The most that can be said about her allegations is that she claims that *some* of her duties were similar to *some* of Brewer's and Castle's duties. Plaintiff does not deny that some of her duties, however, were not shared by Brewer and Castle. For instance, plaintiff concedes that among other things, she was responsible for executing Brewer's and Castle's strategies for their respective markets, but there is no evidence that Brewer or Castle had similar duties. Furthermore, plaintiff states that when she was allegedly replaced in her Channel Consultant II position by a younger woman named Diana Tomai, Tomai "assumed all of [plaintiff's] duties, except those with respect to the Health Care Market, *which by that point were a minor function of the job."* Plaintiff's Affidavit ¶ 40 (emphasis added). Plaintiff also stated at her deposition that Brewer and Castle had "reportables," *i.e.,* employees who reported to them, but that she did not. Plaintiff's Deposition, Brown Affirmation Ex. D, at 14.

Plaintiff also alleges that she had an annual revenue responsibility similar to that of Brewer and Castle, but this assertion is not borne out by the record. In support of this assertion, plaintiff cites Lazarek's deposition testimony that Brewer and Castle had annual revenue responsibilities of about $150 million and $50 million in their respective markets. Lazarek Deposition at 54. Contrary to plaintiff's assertion, however, Lazarek did *not* state that plaintiff's annual revenue responsibility was $82.5 million. Rather, he stated that the segment plaintiff was *supporting* had a target of $82.5 million, and that plaintiff's responsibility was "[s]upporting the people who did have the responsibility for the 82.5 million." *Id.* at 49.

Even if plaintiff has made out a prima facie case, however, RTC has presented evidence to support its affirmative defense that the difference in pay between plaintiff and Brewer and Castle was due to a legitimate factor other than sex. The record is clear that Brewer and Castle had strong backgrounds both in terms of education and relevant work experience. Brewer's resume shows that he has an M.B.A. in Marketing and Finance. At the time he applied for a position at RTC, he had been a Group Product Manager at a large pharmaceutical company for about two years. Prior to that, he had held positions as a marketing consultant, and as a product manager at two other companies. His relevant work experience stretched back over ten years. Lazarek Affidavit Ex. A.

An "Individual Background Summary" form filled out by Castle shows that he also had an M.B.A. in Marketing and Finance. He also had extensive work experience, including a position as Vice President of Marketing/Operations Manager at Case–Hoyt Corporation from 1979 to 1986.

In contrast, plaintiff's highest degree was a bachelor of arts degree. Although plaintiff states that her concentration was in management and that she received a "management certificate" from Cornell University, the fact remains that Brewer and Castle both had more advanced degrees than she. In addition, though plaintiff contends that defendant has "ignore[d] the vast marketing experience possessed by plaintiff," Marianetti Affirmation ¶ 35, she has not presented evidence to show that her relevant experience was as extensive as Brewer's or Castle's.

None of this is meant to disparage or minimize plaintiff's educational and vocational backgrounds. The point is that there are significant differences between her background and those of Brewer and Castle, which RTC could have taken into account in deciding to offer those men a higher salary than plaintiff. It is not enough for plaintiff simply to contend that the sum total of her prior education and experience made her just as qualified an employee as Brewer and Castle. To survive defendant's motion for summary judgment, she must show that there are factual issues relating to the merits of defendant's affirmative defense; In a factually similar case, the Court of Appeals for the Seventh Circuit, affirming summary judgment in favor of an employer on an EPA claim, stated that "[a]lthough [the plaintiff] had no doubt garnered invaluable experience during her tenure with [defendant], we may not second-guess the company's decision to pay more for an advanced business degree where there is no evidence that it paid women with similar degrees a lesser amount or that [the higher-paid employee's] degree was unrelated to the tasks assigned him." *Dey v. Colt Constr. & Dev. Co.*, 28 F.3d 1446, 1462 (7th Cir.1994). *See also Spaulding v. University of Washington*, 740 F.2d 686, 698 (9th Cir.) (employees' relative levels of skill, including relevant education, is component of whether their work is equal for purposes of EPA), *cert. denied*, 469 U.S. 1036, 105 S.Ct. 511, 83 L.Ed.2d 401 (1984). The same reasoning applies here. The issue before me is not whether I would have considered plaintiff's experience to be equal to or greater than Brewer's and Castle's, or whether it was wise for defendant to conclude that her experience was less valuable than theirs. The issue is whether there are factual questions about defendant's affirmative defense, and on the record before me I cannot find that there are.

There are also some other affirmative indications in the record that sex did not play a role in plaintiff's receiving a lower salary than Brewer and Castle. First, there was a significant difference in salary between Brewer and Castle themselves. At the time of hire, Brewer made $60,000 a year, and Castle's salary was $52,500, while plaintiff's salary in 1993 was $48,000. Thus, Castle's salary was actually closer to plaintiff's than it was to Brewer. This fact suggests that the differences in pay among these persons was due to their individual backgrounds and the nature of their duties, not to their sex.

In addition, Lazarek terminated Castle only about six months after he was hired because Lazarek considered Castle's work to be poor, and Castle had not shown any signs of improvement. Lazarek Affidavit Ex. C. While not directly probative of the reasons

for plaintiff's lower salary, this does indicate that Lazarek did not give Castle more favorable treatment than he gave plaintiff. If anything, he treated plaintiff more favorably by warning her that she should seek a position in a different department at RTC, whereas Castle was terminated outright.

I also note that plaintiff has alleged that when she first assumed the Channel Consultant II position, her salary was $47,200, even though RTC's written policy stated that the minimum pay level for that position was $48,800. After she complained to Lazarek, her salary was raised to $48,000, still below the official minimum. Aside from plaintiff's failure to submit a copy of this alleged policy to the court, this allegation, standing alone, does not give rise to any factual issues regarding plaintiff's equal pay claims. Even if plaintiff was paid less than company policy provided for, that does not alter the fact that her job was not substantially equal to Brewer's and Castle's, nor does it create a factual issue about RTC's affirmative defense that Brewer's and Castle's higher salaries were based on their individual backgrounds and not on their sex.

## II. Age Discrimination Claim

■ Plaintiff's age discrimination claim under the ADEA and the HRL is premised upon her "removal" from her position as Channel Consultant II by Lazarek in December 1993. The standards relating to burden and order of proof on this claim are the same both under the ADEA and the HRL. *Tyler v. Bethlehem Steel Corp.*, 958 F.2d 1176, 1180 (2d Cir.), *cert. denied*, 506 U.S. 826, 113 S.Ct. 82, 121 L.Ed.2d 46 (1992). In turn, these standards are derived from, and identical to, those applied to Title VII cases. *Lorillard v. Pons*, 434 U.S. 575, 584, 98 S.Ct. 866, 872, 55 L.Ed.2d 40 (1978); *Tyler*, 958 F.2d at 1180.

■ The sufficiency of plaintiff's claim, then, is analyzed according to the three-step scheme set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–04, 93 S.Ct. 1817, 1824–25, 36 L.Ed.2d 668 (1973) and in *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 252–53, 101 S.Ct. 1089, 1093–94, 67 L.Ed.2d 207 (1981). *Fisher v. Vassar College*, 114 F.3d 1332 (2d Cir.1997)

(in banc); *EEOC v. Ethan Allen, Inc.*, 44 F.3d 116, 119 (2d Cir.1994). Within that framework, the plaintiff has the initial burden of proving a prima facie case of discrimination. To do so, plaintiff must show that: (1) she is a member of the protected age group; (2) she was qualified to perform the duties required by the position; (3) she was subjected to an adverse job action; and (4) the adverse action occurred under circumstances suggestive of age discrimination. *Levin v. Analysis & Technology, Inc.*, 960 F.2d 314, 316 (2d Cir.1992); *Montana v. First Federal Savings & Loan Ass'n of Rochester*, 869 F.2d 100, 104 (2d Cir.1989).

■ If the plaintiff succeeds in establishing a prima facie case, the burden shifts to the defendant to articulate some legitimate, non-discriminatory reason for the plaintiff's termination. If the defendant carries its burden, the plaintiff then has an opportunity to prove by a preponderance of the evidence that the reason offered by the defendant is a pretext for discrimination. *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 506–10, 113 S.Ct. 2742, 2747–48, 125 L.Ed.2d 407 (1993); *Burdine*, 450 U.S. at 253, 101 S.Ct. at 1093–94. Though establishment of the prima facie case shifts the burden of *production* to defendant, though, the burden of *persuasion* remains at all times with the plaintiff, who must prove by a preponderance of the evidence that any seemingly legitimate reason proffered by the employer is, in reality, a pretext for unlawful discrimination. *Fisher*, 114 F.3d at 1335; *de la Cruz v. New York City Human Resources Admin. Dept. of Soc. Serv.*, 82 F.3d 16, 20 (2d Cir.1996), *petition for cert. filed*, July 10, 1996 (No. 96–5214). To defeat a motion for summary judgment in such circumstances, then, the "plaintiff must show that there is a material issue of fact as to whether (1) the employer's asserted reason for discharge is false or unworthy of belief and (2) [it is] more likely than not that the employee's age was the real reason for the discharge." *Viola v. Philips Medical Systems of North America*, 42 F.3d 712, 716 (2d Cir.1994). (citing *Woroski v. Nashua Corp.*, 31 F.3d 105 (2d Cir.1994) and *St. Mary's Honor Center*, 509 U.S. at 515, 113 S.Ct. at 2751–52).

the case at bar, it is clear that plaintiff was within the protected age group at the time she was removed from her Channel Consultant II position in December 1993. Defendant contends that plaintiff has not made out a prima facie case, however, because she has not demonstrated that she was qualified for the position, or that her transfer occurred under circumstances suggestive of age discrimination. It is not clear whether defendant disputes plaintiff's assertion that her transfer constituted an adverse job action.

Defendant, though, has proffered a legitimate, nondiscriminatory reason for plaintiff's removal from the Channel Consultant II position. Defendant contends that plaintiff was removed and assigned to a different position because her performance in the Channel Consultant II position was unsatisfactory. Since defendant has proffered a nondiscriminatory reason, then, I will assume that plaintiff has made out a prima facie case and proceed to the ultimate issue, which is whether plaintiff has shown issues of fact concerning whether defendants' proffered reason is a pretext for age discrimination. See United States Postal Serv. Bd. of Governors v. Aikens, 460 U.S. 711, 715, 103 S.Ct. 1478, 1481–82, 75 L.Ed.2d 403 (1983) ("Where the defendant has done everything that would be required of him if the plaintiff had properly made out a prima facie case, whether the plaintiff really did so is no longer relevant. The district court has before it all it needs to decide whether 'the defendant intentionally discriminated against the plaintiff' ") (quoting Burdine, 450 U.S. at 253, 101 S.Ct. at 1093–94).

On that score, I find that plaintiff has not carried her burden of showing that issues of fact exist concerning whether defendant's proffered reason is a pretext for age discrimination. As the Second Circuit recently made clear in Fisher, the fact that plaintiff may have made out a prima facie case is not necessarily enough for her to prevail on her claim. The establishment of a prima facie case in a discrimination action merely forces the employer to come forward with a legitimate reason for its action, but "the essential elements of this ... prima facie case do not necessarily support a reasonable inference of illegal discrimination." Fisher, 114 F.3d at 1337. To survive summary judgment, then, plaintiff must show that there are factual issues concerning whether defendant's proffered reason is a pretext for age discrimination. Viola, 42 F.3d at 716. Though I recognize that " '[e]mployers are rarely so cooperative as to include a notation in the personnel file' that their actions are motivated by factors expressly forbidden by law," Chambers v. TRM Copy Centers Corp., 43 F.3d 29, 37 (2d Cir. 1994) (quoting Ramseur v. Chase Manhattan Bank, 865 F.2d 460, 465 (2d Cir.1989)), plaintiff must still proffer evidence that puts defendants' intent "genuinely in issue," and "summary judgment remains available to reject discrimination claims in cases lacking genuine issues of material fact." Chambers, 43 F.3d at 40.

Except for the fact that plaintiff's alleged replacement, Diana Tomai (who defendant denies was a true replacement for plaintiff), was younger than plaintiff, there is no evidence at all that plaintiff's age was a factor in defendant's decision to remove her from the Channel Consultant II position. Replacement by a younger person, while sufficient to establish the fourth element of plaintiff's prima facie case, does not, standing alone, indicate that defendant's proffered reason for removing her is pretextual. If it were, then virtually every employee over forty years old who was removed from a position and replaced by a younger person could state an age claim that would withstand summary judgment. Such a holding would be tantamount to saying that a prima facie case would always suffice to raise issues of fact about the truth of the employer's proffered reason, which would render the McDonnell Douglas/Burdine analysis pointless.

In support of her claim, plaintiff also alleges that both prior to and after the time period when she was under Lazarek's supervision, her performance reviews were favorable. She also alleges that at a certain staff meeting prior to her transfer, Lazarek used a status report prepared by plaintiff as an example of the correct form to use for such reports, but at a later meeting, he criticized

the same report. To infer from these allegations that Lazarek's unfavorable review of plaintiff's performance in 1993 was a pretext for age discrimination would be highly speculative to say the least. The mere fact that supervisors differ in their subjective assessments of an employee's performance does not mean that any of those supervisors is being untruthful. In addition, Lazarek's alleged about-face regarding plaintiff's status report, though possibly casting doubt on the sincerity of his statements about the report, is not probative of discrimination. If Lazarek were motivated by a discriminatory animus, it would seem odd for him to have singled out plaintiff's report for praise in the first place. For that matter, it should be noted that Lazarek was the person who offered plaintiff the Channel Consultant II position in July 1993, when plaintiff was forty-seven years old. *See* Defendant's Statement of Undisputed Facts ¶ 9; Plaintiff's Local Rule 25 Statement ¶ 9; Plaintiff's Deposition at 137. Plaintiff testified at her deposition that when Lazarek offered her the position, he stated that "he thought [she] would be great in the marketing communications aspect because of [her] past experience . . ." Plaintiff's Deposition at 137–38. It would be highly illogical to conclude that in the space of six months Lazarek suddenly decided to begin discriminating against plaintiff on account of her age. *See Miller v. Citizens Security Group, Inc.,* 116 F.3d 343, 348 (8th Cir.1997) (stating that it was "simply incredible" that the person who hired plaintiff when plaintiff was age fifty-five or fifty-six "suddenly developed an aversion to older people when he fired Miller less than three years later").

 Even if an inference of pretext could be drawn, then, there is no basis to believe that Lazarek's unfavorable review of plaintiff's performance was a pretext for *age discrimination.* "[T]he fact that the proffered reason was false does not necessarily mean that the true motive was the illegal one argued by the plaintiff." *Fisher,* 114 F.3d at 1338. Accordingly, a "finding of pretext may advance the plaintiff's case, but a plaintiff cannot prevail without establishing intentional discrimination by a preponderance of the evidence." *Id.* at 1338. There is no evidence of age discrimination in this case, and defen-

dant is therefore entitled to summary judgment on this claim.

## III. Retaliation Claim

In her complaint, plaintiff alleges that after she was removed from her position as Channel Consultant II and after she received her unfavorable performance review in February 1994, she began to complain to senior management that she was being discriminated against on account of her age and sex. She alleges that RTC took no action in response to these complaints "other than superficial conversations with Dan Lazarek and Gary Grefath, former managers of Plaintiff." Complaint ¶ 38.

Plaintiff further alleges that defendant retaliated against her on account of her complaints. She alleges that she was not allowed to transfer to a number of other positions within RTC for which she was qualified. She also claims that she had received an oral offer of employment from another company, Volt Delta Resource ("Volt"), but that Volt withdrew the offer after RTC informed Volt of plaintiff's discrimination complaints. Plaintiff alleges that RTC's Employee Relations Manager, Lois Bradley, tried to coerce plaintiff into withdrawing the EEOC complaint that plaintiff had filed in June 1994. Lastly, plaintiff alleges that about ten months after she was removed from the Channel Consultant II position, she was—on paper, at least—reinstated to that position, but that "the position was essentially downgraded" because she now has less authority and responsibilities than she had before.

 Title VII, the EPA, the ADEA, and the HRL all make it unlawful for employers to retaliate against employees for having opposed practices prohibited by those acts. *See* 42 U.S.C. § 2000e–3(a); 29 U.S.C. § 215(a)(3); 29 U.S.C. § 623(d); N.Y. Exec. L. § 296(1)(e). The standards concerning the burden and order of proof on such claims are essentially the same under all those acts, and follow the burden-shifting paradigm of *McDonnell Douglas and Burdine. See Sumner v. United States Postal Service,* 899 F.2d 203, 208 (2nd Cir.1990). Thus, plaintiff must first make out a prima facie case of

728

retaliation. The burden then shifts to defendant to articulate a legitimate reason for its actions, whereupon plaintiff bears the burden of proving that defendant's proffered reason is a pretext for retaliation. *Van Zant v. KLM Royal Dutch Airlines*, 80 F.3d 708, 714 (2d Cir.1996).

To establish a prima facie case of retaliation, plaintiff must show: (1) protected activity that is known by defendant; (2) an employment action disadvantaging plaintiff; and (3) a causal connection between the protected activity and the disadvantageous employment action. *Id.; Tomka*, 66 F.3d at 1308. "Proof of a causal connection can be established *indirectly* by showing that the protected activity was followed closely by discriminatory treatment, ... or through other evidence such as disparate treatment of fellow employees who engaged in similar conduct, ... or *directly* through evidence of retaliatory animus directed against a plaintiff by the defendant." *DeCintio v. Westchester County Medical Center*, 821 F.2d 111, 115 (2d Cir.), *cert. denied*, 484 U.S. 965, 108 S.Ct. 455, 98 L.Ed.2d 395 (1987) (citations omitted).

In the case at bar, the protected activity that plaintiff alleges she engaged in was her submission of a written response to Lazarek's performance appraisal of plaintiff that Lazarek signed on January 31, 1994. In her response, which is dated February 6, 1994, plaintiff stated, *inter alia*, that "[f]or some reason, perhaps, gender or age, [Lazarek] wanted me out of his department." T. Andrew Brown Affirmation Ex. Q. Aside from noting that she was the oldest woman in Lazarek's department, however, plaintiff did not state the basis for this assertion. Plaintiff also alleges that after submitting this response, she met with two members of RTC's Human Resources Department to discuss her complaints about Lazarek, although plaintiff does not expressly allege that she raised the issues of sex or age discrimination at that meeting; *see* Plaintiff's Affidavit ¶ 46.

One of the alleged retaliatory actions relied upon by plaintiff is RTC's alleged interference with her attempt to obtain employment with Volt. Volt allegedly made her a job offer, and plaintiff countered with a higher salary demand. Volt told her that someone would get back to her with a response, but the response never came and she did not receive another offer from Volt.

The basis for plaintiff's allegation that RTC had anything to do with this matter is a conversation she allegedly had with a friend, Todd Barber, who was employed at Volt during the time that plaintiff was applying for a job there. Plaintiff alleges that Barber told her that he had spoken to Rick Kurtz, the Volt employee who made the job offer to plaintiff. According to Barber, Kurtz had stated that he was having daily conversations about plaintiff with Mike Henderson, Kurtz's supervisor at Volt, who was at that time in the process of leaving Volt to take employment with RTC. Plaintiff alleges that Barber told her that Kurtz told Barber that Henderson had told Kurtz that after an upcoming restructuring at RTC, plaintiff would probably no longer have a job there.

Aside from the obvious multiple-hearsay problems with this evidence, it is not in the least indicative of any interference by RTC with plaintiff's dealings with Volt. To infer from this evidence that RTC somehow "badmouthed" plaintiff to Volt would be nothing but sheer speculation. As plaintiff herself has quite accurately put it, she "really do[es]n't know why" Volt never got back to her as promised. Plaintiff's Deposition at 81.

Another instance of alleged retaliation is Lois Bradley's request that plaintiff drop her EEOC charge in December 1994. Plaintiff testified that at Bradley's request, she met with her for about ten minutes. Plaintiff testified that Bradley said to her, "We would like you to consider you [sic] to drop your claim," because at that time plaintiff had been reassigned to her former position. Plaintiff's Deposition Vol. III at 109. Bradley did not *tell* plaintiff to drop the claim, nor did she indicate that plaintiff would harmed in any way if she refused. *Id.* at 110.

These allegations clearly are insufficient to state a prima facie case of retaliation. In *Torres v. Pisano*, 116 F.3d 625 (2d Cir. 1997), the Second Circuit addressed a nearly identical allegation. In *Torres*, the plaintiff, who was employed by a university, was asked on

separate occasions by two university officials to drop her EEOC charge alleging harassment by her supervisor. Rejecting the plaintiff's allegation that this constituted unlawful retaliation, the Second Circuit stated that although the plaintiff claimed that the requests to drop her charge "left her feeling 'frightened' and 'intimidated,' ... she has not shown, as she must, that she suffered 'a materially adverse change in the terms and conditions of employment.'" *Id.*, 116 F.3d at 640 (quoting *McKenney v. New York City Off–Track Betting Corp.*, 903 F.Supp. 619, 623 (S.D.N.Y.1995)). The court added that although "[i]t is conceivable that a demand to withdraw an EEOC charge could constitute retaliation, if it truly had so great an effect on the plaintiff as to alter the conditions of her employment in a material way," such as by veiled threats of adverse actions, such circumstances were not present here, since the plaintiff admitted that she suffered no harm as a result of her refusal of the officials' requests. *Id.*

■ The same is true here. Although plaintiff stated that she "[a]bsolutely" felt that she was being pressured by Bradley to drop her EEOC complaint, she could offer no logical basis for that belief. Plaintiff's Deposition Vol. III at 110. By plaintiff's own admission, Bradley neither explicitly nor implicitly threatened her with any adverse consequences, and plaintiff does not allege that any action was taken against her as a result of her continued pursuit of her EEOC charge. The instant case therefore falls squarely within the principle set forth in *Torres* that a simple request to drop a claim does not amount to adverse action for purposes of establishing a retaliation claim.

Another alleged act of retaliation is plaintiff's alleged "demotion" from the Channel Consultant II position to a technical position. The obvious flaw in this allegation is that plaintiff left the Channel Consultant II position several weeks *before* her first act of protected activity, *i.e.*, her submission of response to Lazarek's January 31, 1994 performance review. Lazarek's review stated that plaintiff had been "recently moved" to a different position, and it was that review that prompted plaintiff to complain in the first place.

Next, plaintiff alleges that about two months after she began work in the technical position, the position was transferred to another department, but plaintiff was not transferred with it. She states that in March 1994, she inquired about a "coaching" position that she had heard was available, but RTC told her that there was no opening for a coaching position. She further alleges that less than two months later, an opening for a coaching position was posted, but she did not apply for it at that time. Plaintiff's Deposition Vol. III at 117. Plaintiff was, however, able to secure a position at her former job of Marketing Manager for Health Care, this time reporting to Randal Simonetti.

It is unclear how any of these acts constituted retaliation. Although plaintiff states that by not being transferred with the technical position, she was left "susceptible to termination," Plaintiff's Affidavit ¶ 50, the fact is that she was not terminated, nor does she allege that anyone threatened her with termination. Likewise, the fact that a coaching position may have been posted in May 1994, nearly two months after plaintiff was told that there was no opening for a coaching job does not support an inference that defendant lied to plaintiff about the coaching position in March. Like plaintiff's other retaliation claims, this claim is based on nothing but speculation.

## CONCLUSION

Defendant's motion for summary judgment (Item 16) is granted, and the complaint is dismissed.

IT IS SO ORDERED.