Alan L. JENSEN, Plaintiff,

v.

GARLOCK, INC., Defendant.

No. 97–CV–6057L.

United States District Court,
W.D. New York.

May 27, 1998.

Jeffrey Wicks, Bansbah, Zoghlin, Asandrov & Wicks, P.C., Rochester, NY, for Plaintiffs.

Joseph C. Dole, Peter A. Jones, Bond, Schoeneck & King, Syracuse, NY, for Defendants.

## DECISION AND ORDER

LARIMER, Chief Judge.

This is a discrimination case brought pursuant to the Age Discrimination in Employment Act, 29 U.S.C. § 621 *et seq.*, (ADEA) and the New York Human Rights Law, Executive Law § 290 *et. seq.* (HRL). Plaintiff Alan L. Jensen (Jensen) asserts that he was unlawfully terminated from his employment with defendant Garlock, Inc. (Garlock) because of his age.

Presently before me is Garlock's motion for summary judgment dismissing the complaint in its entirety. For the reasons stated below, the motion is granted.

## BACKGROUND

Jensen first was employed by Garlock in 1970 and was continuously employed there until his termination on July 28, 1995. Garlock's first position was as a hydraulic press operator. Over the years he was promoted twice and, in 1986, was promoted again to Production Supervisor of the "Expansion Joint Department." He received at least two satisfactory performance reviews and several merit pay increases.

In September 1994 Nanci Malin–Peck became Jensen's immediate supervisor. She was not satisfied with Jensen's performance. In early April 1995, Malin–Peck drafted a Performance Appraisal of Jensen in which she criticized Jensen's job performance as unacceptable and placed him on a sixty-day probation period. Among other criticisms, Malin–Peck stated that Jensen was responsible for missed customer deliveries, failures to notify the customer when a delivery was going to be late, missed shipping dates, customer complaints and internal staff complaints. Malin–Peck contends that she met twice with Jensen to discuss his Performance Appraisal: once shortly after she prepared it in handwritten form, and once again several days later with Garlock's Vice President of Human Resources, Richard Hasenauer. Jensen disputes the manner and adequacy of notice regarding his alleged performance deficiencies.

Toward the end of the sixty-day probationary period Malin–Peck apparently decided that Jensen's performance had not adequately improved. Following another meeting between Malin–Peck, Jensen and Hasenauer, Jensen's employment was terminated on July 28, 1995. Jensen was forty three years old. He was replaced by John Leisenring who was forty years old. After roughly one year, Leisenring was promoted out of the position and replaced by Steve Baker, age forty-nine. Malin–Peck herself was forty-four at the time Jensen was terminated, fifteen months older than Jensen.

On or about May 22, 1996 Jensen filed an administrative charge with the EEOC and subsequently received a right to sue letter. This lawsuit was filed on February 13, 1997.

## DISCUSSION

### A. Summary Judgment Standards

Pursuant to Fed.R.Civ.P. 56(c), a moving party is entitled to a judgment as a matter of law if there is "no genuine issue as to any material fact" and where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). The burden is on the moving party to inform the court of the basis for its motion and to demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). After the moving party has carried its burden, the

non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita,* 475 U .S. at 586, 106 S.Ct. 1348. "[T]he non-moving party must come forward with 'specific facts showing that there is a genuine issue for trial.' " *Id.* at 587, 106 S.Ct. 1348 (quoting Fed.R.Civ.P. 56(e) (alteration in original)).

■ The general principles underlying a motion for summary judgment apply no less to this action simply because it is an employment discrimination case. It is true that courts exercise caution when considering whether to grant summary judgment in cases where an employer's intent is at issue. *See, e.g., Gallo v. Prudential Residential Servs.,* 22 F.3d 1219, 1224 (2d Cir.1994). However, "summary judgment remains available to reject discrimination claims in cases lacking genuine issues of material fact." *Chambers v. TRM Copy Centers Corp.,* 43 F.3d 29, 40 (2d Cir.1994). For a plaintiff in a discrimination case to survive a motion for summary judgment, he must do more than present "conclusory allegations of discrimination," *Meiri v. Dacon,* 759 F.2d 989 (2d Cir.1985); he must offer "concrete particulars" to substantiate the claim. *Id., cited in, Duprey v. Prudential Ins. Co.,* 910 F.Supp. 879 (N.D.N.Y.1996).

**B. *Summary Judgment Analysis in ADEA Cases:***

■ The burdens and order of proof in an ADEA case (and a NYHRL case) are the same as those applied in the Title VII context—*i.e.,* the well-established three-step scheme originally set forth in *McDonnell Douglas v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973) controls. Accordingly, the plaintiff has the initial burden of proving a *prima facie* case of wrongful termination under the ADEA and NYHRL. To do so, a plaintiff must show that: (1) he is at least forty years of age; (2) he was qualified for his position (*i.e.,* his job performance was satisfactory); (3) he was terminated; and (4) the termination occurred under circumstances giving rise to an inference of age discrimination. *See Grady v. Affiliated Cent. Inc.,* 130 F.3d 553, 559 (2d Cir.1997). In

establishing this *prima facie* case a plaintiff's burden is *de minimis. Chambers,* 43 F.3d at 37.

■ In cases where a plaintiff articulates a *prima facie* case the defendant then has the procedural burden of producing "through the introduction of admissible evidence, reasons for its actions which, if believed by the trier of fact, would support a finding that unlawful discrimination was not the cause of the employment action." *Grady,* 130 F.3d at 559 (citing *St. Mary's Honor Center v. Hicks,* 509 U.S. 502, 507, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993)). If the defendant does so, then the presumption of discrimination raised by the plaintiff's *prima facie* case "drops out of the picture" and the plaintiff, "in order to defeat summary judgment, must present evidence sufficient to allow a rational fact finder to infer that the employer was actually motivated in whole or in part by age discrimination." *Grady,* 130 F.3d at 560 (citations omitted).

■ Thus, in such cases, the "plaintiff must show that there is a material issue of fact as to whether (1) the employer's asserted reason for discharge is false or unworthy of belief and (2) [it is] more likely than not that the employee's age was the real reason for the discharge." *Viola v. Philips Med. Sys.,* 42 F.3d 712, 716 (2d Cir.1994)(citing *Woroski v. Nashua Corp.,* 31 F.3d 105 (2d Cir.1994) and *St. Mary's Honor Center,* 509 U.S. at 515, 113 S.Ct. 2742). "At all times the burden of persuasion remains with the plaintiff, who must prove by a preponderance of the evidence that any seemingly legitimate reason proffered by the employer is, in reality, a pretext for unlawful discrimination." *de la Cruz v. New York City Human Resources Admin. Dep't of Social Services,* 82 F.3d 16, 20 (2d Cir.1996); *see also Fisher v. Vassar College,* 114 F.3d 1332 (2d Cir.1997), *cert. denied,* — U.S. ——, 118 S.Ct. 851, 139 L.Ed.2d 752 (1998).

**C. *Garlock's Motion***

■ In this case, Garlock asserts that Jensen has failed to establish a *prima facie* case of age discrimination and that even if he had, Jensen cannot show that an issue of fact

exists with respect to whether Garlock's stated reason for his termination is a pretext for discrimination. It is unnecessary for me to determine whether Jensen has established a *prima facie* case because even assuming that he has, Jensen has failed to rebut Garlock's explanation with any evidence sufficient to raise a genuine issue of material fact regarding whether his termination was motivated by unlawful discrimination.

Garlock has presented admissible, credible evidence explaining its decision to terminate Jensen. In an affidavit, Garlock's direct supervisor Nanci Malin–Peck states that during the time she supervised Jensen (September 1994 through July 1995), she became aware of several performance problems. Malin–Peck Aff't at ¶ 5. Specifically, she states that customers complained to her that deliveries were not being made when promised. *Id.* On at least one occasion, a customer complained that he had not been warned that a shipment would be late and, therefore, had an entire crew waiting for a shipment that never arrived. *Id.* Malin–Peck received complaints from two other managers (Julie Benzer, Product Line Specialist, and Timothy Hurley, Marketing Manager) about problems originating in Jensen's department. *Id.*

Distinct from these delivery problems, Jensen also repeatedly failed to submit timely monthly status reports to Malin–Peck, and monthly production reports to the accounting department. *Id.* at ¶ 6.

Finally, Jensen failed to satisfactorily address and/or complete a variety of matters that Malin–Peck brought to his attention, including establishing a workable system for "reorder points and quantities" (ROP's and ROQ's); developing and implementing a workable Inventory Plan; addressing safety and housekeeping issues; developing a scheduling system; and complying with a firmwide TQI initiative. *Id.*

Jensen's dissatisfactory performance is further demonstrated by documentary evidence, including memos to him from the accounting department (George Roffe) dated January 20, 1995 and April 3, 1995, regarding late production reports and reminding Jensen of the importance of submitting the reports on time. Malin–Peck Aff't at Ex. F.

Also, Malin–Peck authored a variety of notes and memos throughout the entire period of time she supervised Jensen. They include personal file notes identifying and monitoring Jensen's performance deficiencies, memorializing discussions with Jensen about job responsibilities, and memorializing the performance deficiencies themselves. Others were notes or memos to Jensen regarding job responsibilities needing his attention. *Id.* Finally, in deposition testimony, Benzer and Hurley testified that a number of problems impacting the company's performance and customer satisfaction arose in Jensen's department, which ultimately were Jensen's responsibility. Hurley Depo. at 36–37, 49–52; Benzer Depo. at 33–35, 45, 51–52, 76.

Jensen disputes Malin–Peck's specific criticisms and also disputes that he was made aware of them in the manner alleged by her. Jensen disputes the existence of on-time delivery problems, alleging, *inter alia,* that his on-time delivery rate was 91%. He disputes tardiness in submitting production reports, alleging that he improved his performance in this area. He disputes the intended meaning of other employees' statements to Malin–Peck. Finally, he disputes Malin–Peck's characterization of his shortcomings related to ROP's, ROQ's, Inventory Plan, TQI Initiatives, and safety/housekeeping issues. In sum, Jensen disputes the accuracy of Malin–Peck's assessments.

Jensen arguably has raised some issues about whether he was treated fairly by Malin–Peck. However, this is not enough. Merely disagreeing with an employer's assessment, or even suggesting that an employer has not been fair in its stated reasons for terminating an employee does not satisfy a plaintiff's burden: Jensen must raise a genuine issue of material fact that the decision to terminate him was motivated at least in part by an *unlawful* reason, *i.e.,* age discrimination. As the Second Circuit recently reiterated: "the creation of a genuine issue of fact with respect to pretext alone is not sufficient. There must also be evidence that would permit a rational factfinder to infer that the discharge was actually motivated, in whole or in part, by discrimination on the basis of

age." *See Grady,* 130 F.3d at 561. This Jensen has failed to do.

Nowhere in Jensen's allegations is there even a suggestion that Malin–Peck or anyone else at Garlock was motivated by age animus. Jensen expressly admits that no one ever made comments to him about his age or told him that he was too old to work at Garlock. Jensen Depo. at 109, 241. There is no evidence of stray 'age-related' comments by anyone at Garlock. There is no evidence of any management initiative to hire young persons and/or to terminate older ones. There is no evidence about corporate hiring/firing policies or practices whatsoever.

Benzer testified during her deposition that Malin–Peck openly criticized many employees' performance deficiencies, but did not "single Al Jensen out." Benzer Depo. at 54–62. Indeed, there is no evidence that Jensen himself thought that age was the reason for his termination, until the administrative complaint preceding this lawsuit was filed.

The only evidence Jensen has of age animus is the same evidence on which his *prima facie* case lies. And while in some circumstances this might be sufficient to raise an issue of fact as to whether the employer was unlawfully motivated, in this case it is not. *See Dinolfo v. Rochester Telephone Corp.,* 972 F.Supp. 718, 726 (W.D.N.Y.1997)("As the Second Circuit recently made clear . . . the fact that plaintiff may have made out a prima facie case is not necessarily enough for her to prevail on her claim.")(citing *Fisher,* 114 F.3d at 1337). In the face of Garlock's amply supported credible explanation, Jensen's *prima facie* evidence simply is not strong enough to put Garlock's intent "genuinely in issue." *Chambers,* 43 F.3d at 40.

True, Jensen was replaced by someone younger than he: but only three years younger. This is hardly a compelling display of age preference. *O'Connor v. Consolidated Coin Caterers Corp.,* 517 U.S. 308, 313, 116 S.Ct. 1307, 134 L.Ed.2d 433 (1996)(an inference of age discrimination "can not be drawn from the replacement of one worker with another worker [who is] insignificantly younger"). Indeed, Jensen's position ultimately was filled by someone five years older than he, and Malin–Peck herself is older than Jensen. Thus, none of this evidence reasonably suggests that Malin–Peck was trying to replace Jensen due to advancing age.

Nor does the fact that Jensen had satisfactory performance evaluations for 23 years create a genuine issue of material fact regarding an unlawful motivation for his termination. While a lengthy period of satisfactory performance may raise an inference of discrimination for purposes of establishing a *prima facie* case, by itself, such a factor is insufficient to suggest that an employer's amply supported reasons for terminating an employee are pretextual. Unfortunately, for some employees, performance that is deemed adequate for a long period of time can become inadequate in a changed economic climate, or following a shift in job responsibilities, or in the eyes of a different supervisor. Without more, however, this is not unlawful.[1]

In this case, the record clearly reveals that Malin–Peck did not care for Jensen's job performance. But whether her criticisms were entirely justified, or whether terminating Jensen was the best or only alternative under the circumstances, there is no evidence whatsoever that Malin–Peck was motivated by age animus. Thus, while it may be unfortunate that Jensen's job performance was deemed inadequate after a lengthy period of satisfactory employment, I am unable to find any evidence that this change was based upon conduct unlawful under the ADEA.

---

1. In his complaint, Jensen also states that Garlock has demonstrated a pattern of firing qualified employees based upon their age. Complaint at ¶¶ 13, 18. At his deposition, Jensen identified seven such individuals. However, Garlock has produced admissible, credible evidence showing that these individuals were terminated (or resigned) for a variety of reasons, while being supervised by six different supervisors, at different times over a 13–year period. Aff't of Drew A. Jozefik. Garlock further represents that no particular policies regarding probation existed in 1995. *Id.* Garlock asserts that this evidence proves the absence of any "pattern" of terminations as alleged by Jensen.

Jensen has not responded to Garlock's evidence or its position regarding the alleged "pattern" of terminations. In short, he has proffered no evidence whatsoever to rebut Garlock's explanation. This is insufficient to sustain his claim.

Without such evidence, Jensen's ADEA and NYHRL claims cannot proceed.

## CONCLUSION

For all the above reasons, defendant's motion for summary judgment (# 10) is granted and the complaint is dismissed in its entirety.

IT IS SO ORDERED.