**Jeanette C. McNULTY, Plaintiff,**

v.

**THE NEW YORK CITY DEPARTMENT OF FINANCE, Office of the New York City Sheriff, Office of the New York City Mayor, the City of New York, New York City Department of Personnel, Randy Mastro and Kerry J. Katsorhis, Defendants.**

**No. 96 Civ. 2160 (LBS).**

United States District Court, S.D. New York.

April 5, 1999.

Bruce E. Menken, Beranbaum Menken Ben–Asher & Fishel LLP, New York City, for Plaintiff.

**Memorandum and Order**

SAND, District Judge.

Plaintiff, Jeanette McNulty, brings this employment discrimination action against New York City and two City officials pursuant to Title VII of the Civil Rights Act of 1964 ("Title VII"), codified at 42 U.S.C. §§ 2000e to 2000e–17, the Age Discrimination in Employment Act of 1967 ("ADEA"), codified at 29 U.S.C. §§ 621–634, the New York State Human Rights Law ("SHRL"), codified at N.Y. Exec. Law §§ 290–301, and the New York City Human Rights Law ("CHRL"), codified at N.Y.C. Admin. Code §§ 8–101 to –131. Presently before the Court is the Defendants' Motion for Summary Judgment pursuant to Federal Rule of Civil Procedure 56. For the reasons set forth below, Defendants' Motion is granted in part and denied in part.

## BACKGROUND [1]

Plaintiff is a New York City resident who worked for the City in various capacities from December 1978 until February 1995. In July 1990, during the tenure of David Dinkins as Mayor of New York City, Plaintiff began working for the City Sheriff, Philip Crimaldi. Because Plaintiff was a provisional employee, her employment was "at will" and could be terminated summarily.

In November 1993, Rudolph Giuliani was elected Mayor of the City of New York and appointed Randy Mastro as his Chief of Staff and Robert Avaltroni as Acting Sheriff. After several weeks, the Mayor appointed Kerry Katsorhis to serve as the City Sheriff on a permanent basis and Avaltroni continued working for the City as First Deputy Commissioner.

In February 1995, Mayor's Office officials furnished Katsorhis with a list of seven members of the Sheriff's Office to terminate. Plaintiff, who was then fifty-nine years old, was among those employees fired. Three of these individuals were immediately rehired upon reconsideration and all of the remaining individuals, other than Plaintiff, have since accepted other employment with the City. Plaintiff's replacement in the Sheriff's Office was a forty-seven year old woman named Ellen Poliski.

In April 1995, Plaintiff interviewed for and was orally offered the position of Director of Administration with the New York City Conflicts of Interest Board (COIB). Plaintiff accepted the position but the offer was later withdrawn after staff-members in the Mayor's Office told COIB officials that the Vacancy Control Board would not approve her appointment. In August 1995, COIB hired a fifty-three year old woman, Ute O'Malley, to fill the position.

1. The underlying facts that precipitated the filing of the present suit are set forth in greater detail in the Court's previous Opinion in

On or about August 1, 1995, Plaintiff filed a charge of employment discrimination based on age and gender with the Equal Employment Opportunity Commission ("EEOC") and the New York State Division of Human Rights. On January 18, 1996, she received a "right to sue letter" from the EEOC and commenced this action within ninety days. Subject matter jurisdiction over the Title VII and ADEA claims is premised on 28 U.S.C. § 1331 and any jurisdiction the Court may have over Plaintiff's state law claims depends on 28 U.S.C. § 1367, the statute governing supplemental jurisdiction.

In an Opinion dated October 24, 1996, the Court granted the Defendants' Motion to dismiss Plaintiff's claims against the Office of the Sheriff, the Office of the Mayor, and the Department of Personnel, on the ground that those entities were not suable. *See McNulty v. New York City Department of Finance,* 941 F.Supp. 452, 461 (S.D.N.Y.1996). In all other respects, the Court denied the Defendants' Motion and left Plaintiff's claims intact. *Id.* at 457–62.

On December 16, 1998, after discovery was completed, the Defendants filed this Motion for Summary Judgment. The Court heard oral argument on January 14, 1999, and reserved decision.

## LEGAL STANDARD

The Court may grant summary judgment only where the moving papers and affidavits submitted by the parties show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. Pro. 56(c); *see also Brown v. City of Oneonta,* 106 F.3d 1125, 1130 (2d Cir.1997). In ruling on a motion for summary judgment, a court "is not to weigh the evidence but is instead required to view the evidence in the light most favorable to the party opposing summary

this case. *See McNulty v. New York City Dep't of Finance,* 941 F.Supp. 452 (S.D.N.Y.1996). Familiarity with that Opinion is assumed.

judgment, to draw all reasonable inferences in favor of that party, and to eschew credibility assessments." *Weyant v. Okst,* 101 F.3d 845, 854 (2d Cir.1996). Summary judgment is a "drastic procedural weapon because 'its prophylactic function, when exercised, cuts off a party's right to present his case to the jury.'" *Garza v. Marine Transp. Lines, Inc.,* 861 F.2d 23, 26 (2d Cir.1988) (quoting *Donnelly v. Guion,* 467 F.2d 290, 291 (2d Cir.1972)).

## DISCUSSION

### *Plaintiff's Title VII and ADEA Claims Against the City*

#### *(1) Introduction*

■ The Second Circuit has explained the framework for considering claims of pretextual employment discrimination in light of the familiar three-part burden-shifting analysis of *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). Claims under the ADEA receive the same analysis as those brought pursuant to Title VII. *See Raskin v. Wyatt Co.,* 125 F.3d 55, 60 (2d Cir.1997).

In order to establish a *prima facie* case of unlawful employment discrimination under either statutory scheme, "a plaintiff must show (1) that [s]he belongs to a protected class, (2) that [s]he was performing h[er] duties satisfactorily," (3) that she suffered an adverse employment action, such as discharge, and (4) that this adverse employment action "occurred in circumstances giving rise to an inference of discrimination on the basis of h[er] membership in that class." *McLee v. Chrysler Corp.,* 109 F.3d 130, 134 (2d Cir.1997);

accord *Grady v. Affiliated Cent., Inc.,* 130 F.3d 553, 559 (2d Cir.1997).

■ The Supreme Court has rejected the argument that to succeed in establishing a *prima facie* case of discrimination, a plaintiff must show that her replacement was outside of the statute's protected class. *See O'Connor v. Consolidated Coin Caterers Corp.,* 517 U.S. 308, 312, 116 S.Ct. 1307, 134 L.Ed.2d 433 (1996) (rejecting argument in ADEA action that plaintiff could not prove *prima facie* case where replacement was more than forty years old).[2] In considering ADEA claims, however, courts may consider whether the age difference between the plaintiff and the replacement is "substantial." *See id.* at 312–13, 116 S.Ct. 1307.[3]

"The burden that an employment discrimination plaintiff must meet in order to defeat summary judgment at the *prima facie* stage is *de minimis.*" *McLee,* 109 F.3d at 134. A plaintiff need not come forward with direct evidence to prove a *prima facie* case and may "rely on the cumulative weight of circumstantial evidence." *Luciano v. Olsten Corp.,* 110 F.3d 210, 215 (2d Cir.1997) (citing *Rosen v. Thornburgh,* 928 F.2d 528, 533 (2d Cir. 1991)).

Once the plaintiff presents a *prima facie* case, the defendant must "articulate a legitimate, non-discriminatory reason for the adverse employment decision." *Raskin,* 125 F.3d at 64; accord *Grady,* 130 F.3d at 559. If the defendant succeeds in meeting this burden of production, the presumption of discrimination created by the *prima facie* case drops from the analysis "and the plaintiff, in order to defeat summary judg-

**2.** A post-*O'Connor* decision from within this Circuit made reference in *dicta* to the requirement "that the position was ultimately filled by a person not of the protected class." *Raskin,* 125 F.3d at 64–64. We of course follow the Supreme Court's holding.

**3.** While there is no bright line for determining when an age difference is "substantial" under *O'Connor,* Courts in this District have found gaps of more than ten years to be sufficient

and those of fewer than five years to be insufficient. *Compare, e.g., Curley v. St. John's Univ.,* 19 F.Supp.2d 181, 183–84, 192 (S.D.N.Y.1998) (finding significance in twelve- to fourteen-year age differences); *with Jensen v. Garlock,* 4 F.Supp.2d 219, 223 (S.D.N.Y.1998) (three-year difference insignificant), *Tanzini v. Marine Midland Bank,* 978 F.Supp. 70, 76 n. 3 (N.D.N.Y.1997) (four-and-one-half-year difference insignificant).

ment, must present evidence sufficient to allow a rational factfinder to infer that the employer was actually motivated in whole or in part by" impermissible criteria. *Grady,* 130 F.3d at 559–60; *accord Stern v. Trustees of Columbia Univ.,* 131 F.3d 305, 312 (2d Cir.1997). At this stage, "a plaintiff may rely on the evidence constituting the *prima facie* case, together with supportable inferences to be drawn from the false or erroneous character of the employer's proffered reason for the adverse action." *Fisher v. Vassar College,* 114 F.3d 1332, 1333 (2d Cir.1997) (*en banc* ), *cert. denied,* —— U.S. ——, 118 S.Ct. 851, 139 L.Ed.2d 752 (1998).

### (2) The Prima Facie Case

■ Plaintiff is a member of a protected class for purposes of both Title VII and the ADEA, because of her gender and the fact that she was terminated after her fortieth birthday. *See* 42 U.S.C.A. § 2000e–2(m) (West 1999) (Title VII); 29 U.S.C.A. § 631 (West 1999) (ADEA). The Defendants do not dispute that Plaintiff was performing her duties satisfactorily or that she was discharged and not rehired. Defendants contend, however, that the circumstances of Plaintiff's termination and subsequent treatment, including during the period of the COIB application process, do not give rise to an inference of discrimination based on age or gender. Viewing all of the evidence in the light most favorable to the Plaintiff, as we are required to do for purposes of considering this Motion, we may draw the following conclusions.

Between December 1994 and March 1995, Sheriff's Office revenues increased and the Office hired additional non-uniform staff. Seven individuals were hired during this period, all of whom were male and six of whom were at least fifteen years younger than Plaintiff. In hiring these men, the Defendants may not have adhered to standard City employment practices, such as those requiring the City to maintain a log of certain EEO statistics regarding all applicants.

In February 1995, the Sheriff's Office fired Plaintiff and five others who Plaintiff asserts were similarly situated, four of whom were men. Two men and the woman other than Plaintiff were rehired immediately on reconsideration, and the remaining two men were rehired within the year. Plaintiff, the oldest of the six individuals fired, is the only individual from that group not to have been rehired. Two male provisional managers who were substantially younger than Plaintiff and who had also been appointed during the Dinkins Administration were not fired during this time.

The firing decisions were made by Anthony Carbonetti, then a twenty-six year old Mayor's Office official responsible for appointments, and John George, then a thirty-year old Sheriff's Office official, without input from Plaintiff's supervisor, who was thoroughly satisfied with Plaintiff's performance. Carbonetti claimed that he created charts and other documents detailing the reason behind all firing decisions but subsequently discarded all of them when he changed offices. None of the other individuals involved in the decision-making process retained any of the documents; notes, records, charts, or memoranda that they used.

The Defendants replaced Plaintiff several weeks later with Ms. Poliski, an individual twelve years younger than she who was to perform the same tasks. As with the seven men hired during late 1994 and early 1995, the City may have failed to follow normal procedures in hiring Ms. Poliski. She had never before worked for New York City or in the public sector but received the same salary as had Plaintiff.

Plaintiff then interviewed for, and was offered, a job with the COIB. For reasons that the Defendants are still unable to explain, this job offer was withdrawn after COIB officials were informed that the Vacancy Control Board would not approve her appointment. In August 1995, COIB

hired a fifty-three year old woman, Ute O'Malley, to fill the position. According to Plaintiff, Defendants hired O'Malley only after receiving notice of Plaintiff's discrimination claim.

We believe that the above facts, taken together, satisfy the *de minimis* burden required to establish an inference of discrimination for purposes of both Title VII and the ADEA. Plaintiff has raised a host of questions surrounding her termination, as well as the eleventh hour decision to withdraw the COIB job-offer. We recognize that many of these circumstances, taken independently of one another, may not give rise to an inference of illegal discrimination, especially as to Plaintiff's claim of gender discrimination under Title VII, the weaker of her two claims. After examining the totality of the circumstances, however, we believe that Plaintiff has offered sufficient evidence of both gender- and age-based discrimination to trigger an obligation on the part of the Defendants to explain their behavior.

Accordingly, Plaintiff has succeeded in stating a *prima facie* case under both Title VII and the ADEA.

### (3) The Defendants' Explanations

The Defendants have proffered non-discriminatory explanations for Plaintiff's termination and for their failure to rehire her immediately.[4]

As to Plaintiff's termination, the Defendants state that Plaintiff was among a class of individuals "in high level or sensitive positions" who were fired "in order to have the opportunity to bring in new people with a fresh perspective to City government and to help the Mayor achieve an acceleration of advancing his agenda for change." (Def's Br. at 9.)[5] The Defendants compiled the proposed lists by considering certain factors, such as whether the given employee was provisional, a member of high-level management, or had received his/her latest promotion or pay raise during the prior administration, under Mayor Dinkins.

As to why Defendant Katsorhis did not advocate for Plaintiff, and Plaintiff did not receive reconsideration of her termination—unlike three of her colleagues—the Defendants assert that she was not indispensable to the Sheriff's Office operations and that they felt her duties could be handled by other individuals.

The Defendants fail to offer a satisfactory explanation as to why the COIB job offer was retracted. Defendants have argued that the offer was withdrawn because the Vacancy Control Board would not have approved her. Without some hint as to why the Vacancy Control Board reached this decision, the Defendants' answer provides no information whatsoever from which we could conclude that their behavior was non-discriminatory. It is simply no defense to an allegation of employment discrimination to state that a plaintiff was refused a job because another department of the very entity charged with the discrimination directed that result. The question remains *why* the Vacancy Control Board directed that result, and that is a question the Defendants have not answered. (*See, e.g.,* Tr. Oral Arg. at 11–12.)

Accordingly, Defendants have offered a nondiscriminatory explanation for certain, but not all, of the adverse employment actions Plaintiff suffered.

---

**4.** On the date Plaintiff learned of her termination, and only hours after Plaintiff complained to Defendant Katsorhis and others that she was being treated differently from her male counterparts, Defendant Katsorhis informed Plaintiff and three of her colleagues that they had been terminated for budgetary reasons. Defendants now state that this explanation was false and that it was given in order to "soften the blow" to those who had been fired. We take up the import of this admittedly false explanation *infra.*

**5.** We note that the Defendants do not argue that Plaintiff was among the category of high-level, policy-making officials excluded from the definition of "employee" by Title VII, *see* 42 U.S.C.A. § 2000e(f) (West 1999), and the ADEA, *see* 29 U.S.C. § 629(f) (West 1999).

*(4) The Plaintiff's Ultimate Burden*

■ Plaintiff offers five credible reasons for disbelieving the Defendants' explanation that she was fired in a move designed to bring "fresh" perspective to the Sheriff's Office by sweeping out Dinkins' Administration appointees.

First, and most importantly, the Defendants rehired the five individuals similarly situated to Plaintiff who were fired along with Plaintiff during the February 1995 sweep, all of whom were younger than Plaintiff and four of whom were male. Second, Plaintiff was a registered Republican who never said or did anything on the job that caused Katsorhis to believe that she was not committed to the Giuliani agenda. Third, Plaintiff was the lowest level provisional manager fired from the Sheriff's Office, and was therefore not in a sensitive policy-making position. Fourth, other individuals who were more closely associated with Sheriff Crimaldi and the Dinkins Administration were not removed. Fifth, certain young, male provisional managers hired during the Dinkins administration were not fired during the February 1995 "purge," including at least one who received his most recent promotion at the end of the Dinkins Administration.

Plaintiff also offers reasons to dispute the Defendants' explanation for why she was not immediately rehired along with three of her colleagues and why Defendant Katsorhis did not advocate for her immediate rehire, as he did for five of her colleagues, four of whom were male. Plaintiff has adduced evidence indicating that her job was important to the functioning of the Sheriff's Office and that her supervisor's opinion was not sought before the termination. That Plaintiff's job was important and could not be handled by existing staffers is buttressed by the Defendants' decision to hire a replacement soon after her termination, and Plaintiff's sound work performance is further established by the COIB's decision to extend her a job offer on the day of her interview due in part to strong Sheriff's Office references.

A jury could reject the Defendant's proffered explanations in light of these factors and, when combined with the evidence set forth in Plaintiff's ADEA *prima facie* case, conclude that the real reason for her termination and subsequent treatment was age-based discrimination. The argument with respect to Plaintiff's Title VII claim presents a closer question, for her Title VII *prima facie* case was not particularly strong and the Second Circuit has made clear that "[i]f the plaintiff's evidence was barely sufficient to make out a *prima facie* case, it may not be sufficient to establish discrimination after the defendant has proffered a neutral rationale." *Stern v. Trustees of Columbia Univ.*, 131 F.3d 305, 312 (2d Cir.1997). Nonetheless, we conclude that it would be inappropriate to grant the Defendants' Motion on the Title VII count in the light of the fact that six men were hired just before her termination, four of these men filled positions similar to Plaintiff's, all men fired along with Plaintiff were subsequently rehired, all of the relevant decisions were apparently made by men, and because the Defendants' explanations for the treatment Plaintiff received appear inconsistent with available facts.

We are aided in this conclusion by Defendant Katsorhis's post-termination statement to Plaintiff indicating that the she was fired due to budgetary reasons, an explanation the Defendants now explicitly disavow. *See supra* note 4. Why Katsorhis felt compelled to offer Plaintiff a false justification for her termination only hours after she expressed concern that she was being treated differently from her male colleagues is a question properly left to a jury.

*(5) Conclusion*

The presence of disputed material facts regarding the circumstances of Plaintiff's termination, and the subsequent decisions not to rehire her, preclude summary judgment. Accordingly, we deny Defendants'

Motion as to Plaintiff's Title VII and ADEA claims.

### Plaintiff's SHRL and CHRL Claims Against the Individual Defendants

Defendants argue that the Court lacks subject matter jurisdiction over Plaintiff's state law claims against the individual defendants under the election of remedies provisions that govern SHRL and CHRL claims. The relevant SHRL section reads as follows:

> Any person claiming to be aggrieved by an unlawful discriminatory practice shall have a cause of action in any court of appropriate jurisdiction for damages and such other remedies as may be appropriate, unless such person had filed a complaint hereunder or with any local commission on human rights, . . . provided that, where the division has dismissed such complaint on the grounds of administrative convenience, on the grounds of untimeliness, or on the grounds that the election of remedies is annulled, such person shall maintain all rights to bring suit as if no complaint had been filed with the division.

N.Y. Exec. Law § 297 (McKinney's 1999). The CHRL contains essentially identical language and allows a plaintiff to file suit "in any court of competent jurisdiction . . . unless such person has filed a complaint with the city commission on human rights or with the state division of human rights with respect to such alleged unlawful discriminatory practice or act of discriminatory harassment or violence." N.Y.C. Admin. Code § 8–502(a). Defendant points out that prior to commencing the instant action, Plaintiff filed a charge of employment discrimination with the New York State Division of Human Rights.

Plaintiff concedes that because she filed a claim with the New York State Division of Human Rights, her SHRL claims are barred. (*See* Pl's Br. at 27 n. 13.) Plaintiff contends, however, that her CHRL claims remain properly before the Court because she did not raise them before the New York State agency. Plaintiff's approach distorts the plain meaning of the election of remedies provisions, which operate to foreclose access to courts regarding any "discriminatory practice" or act of harassment for which a claim is made "with the city commission on human rights *or* with the state division of human rights." N.Y.C. Admin. Code § 8–502(a) (emphasis added).

Plaintiff attempts to circumvent this clear statement by noting the different remedies available under the City and State provisions and the more expansive conception of discrimination used in the CHRL, apparently arguing that the remedy sought—rather than the discriminatory act complained of—lies at the heart of the election of remedies analysis. Plaintiff therefore asserts that "[b]y invoking the weaker protections of the State Human Rights Law in an administrative forum, plaintiff was hardly making a choice to forego a judicial action under the more potent City law." (Pl's Br. at 27.)

■ That Plaintiff may not have *intended* to forego her right to initiate judicial action pursuant to the CHRL by asserting an SHRL claim before the State agency does not alter the terms of the election of remedies provisions. The SHRL claims previously asserted and the CHRL claims now raised arise from the exact same discriminatory practices. Having elected to pursue redress for those grievances before the SHRL, Plaintiff is now foreclosed from bringing either CHRL or SHRL claims before this Court. This result is in accord with the great weight of the authority from within this District. *See DiPalto v. New York City Off Track Betting Corp.*, 94 Civ. 5773(KMW), 1998 WL 276180, at *3 (S.D.N.Y. May 28, 1998); *Branker v. Pfizer, Inc.*, 981 F.Supp. 862, 865 (S.D.N.Y. 1997); *Lyman v. City of New York*, 96 Civ. 2382(PKL), 1997 WL 473976, at *4 (S.D.N.Y. Aug. 20, 1997); *Del Valle Hernandez v. New York City Law Dept. Corp. Counsel*, 94 Civ. 9042(AJP)(SS), 1997 WL

27047, at *11 (S.D.N.Y. Jan. 23, 1997); *Hourahan v. Ecuadorian Line, Inc.*, 95 Civ. 10698(AGS), 1997 WL 2518, at *6 (S.D.N.Y. Jan. 3, 1997); *Koster v. Chase Manhattan Bank,* 609 F.Supp. 1191, 1196 (S.D.N.Y.1985); *Collins v. Manufacturers Hanover Trust Co.*, 542 F.Supp. 663, 672–73 & nn. 4–5 (S.D.N.Y.1982).

### CONCLUSION

For the foregoing reasons, Defendant's Motion is denied as to Plaintiff's Title VII and ADEA claims and granted as to Plaintiff's SHRL and CHRL claims.

Upon receipt of this Memorandum and Order, the parties are to contact the Court to request a pretrial conference during the week of April 12, 1999, at which time the Court will set a trial date and a date for submission of a joint pretrial order.

SO ORDERED.