Sydell **RALKIN**, Plaintiff,

v.

**NEW YORK CITY TRANSIT AUTHORITY**, Defendant.

No. CV–97–3245 (CPS).

United States District Court, E.D. New York.

Aug. 24, 1999.

## MEMORANDUM AND ORDER

SIFTON, Chief Judge.

Plaintiff Sydell Ralkin brings this action against the New York City Transit Authority (the "NYCTA") pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e *et seq.*, the Age Discrimination in Employment Act of 1967, as amended (the "ADEA"), 29 U.S.C. §§ 621 *et seq.*, and the Civil Rights Act of 1866, as amended, 42 U.S.C. § 1981,[1] alleging employment discrimination on the basis of her race, religion, and age. Defendant NYCTA now moves pursuant to Rule 56 of the Federal Rules of Civil Procedure for summary judgment dismissing the complaint.

For the reasons stated below, defendant's motion is granted, and the complaint is dismissed.

### BACKGROUND

The following facts are taken from the complaint, the affidavits and accompanying exhibits submitted in support of the instant motion, and the parties' statements pursuant to Rule 56.1 of the Local Civil

---

1. The complaint also asserts a claim pursuant to the Fair Labor Standards Act, as amended, 29 U.S.C. §§ 201 *et seq.*, and a § 1981 claim for punitive damages. In her memorandum of law in opposition to the instant summary judgment motion, plaintiff withdraws these claims. Accordingly, these claims are dismissed, and defendant's motion for summary judgment dismissing these claims is denied as moot.

Rules of this Court. Any disputes of material fact are noted.

The NYCTA is a public benefit corporation established pursuant to New York Public Authorities Law §§ 1201 *et seq.* for the purpose of operating transit facilities in New York City.

On March 6, 1995, plaintiff Sydell Ralkin, a Caucasian, Jewish woman, began working at the NYCTA as a Computer Specialist, Level II, on a provisional basis in the NYCTA's Automated Fare Collection Systems ("AFC Systems") division. Plaintiff was terminated from such provisional employment on September 1, 1995. At the time of both her hiring and firing, plaintiff was fifty-seven years old.

Before she was hired by the NYCTA, Robert Otero, the then-acting director of AFC Systems, screened plaintiff's application and interviewed her to determine her technical abilities. After concluding that she satisfied the requirements for the position, Otero passed her application on to supervisors in the particular area for which she was being recruited without any recommendation as to a hiring decision. (Pl.'s 56.1 Stat., Exs. A, D; Def.'s Reply Aff., Ex. 1.) As part of the interview process, plaintiff also was interviewed by Helene Licursi, the then-Deputy Director of AFC Systems, and two Computer Specialists, Level II. (Pl.'s 56.1 Stat. at ¶ 2; Def.'s Reply Aff., Ex. 2.) At her deposition, Licursi testified that she was the manager who recommended that plaintiff be hired for the position. (Def.'s Reply Aff., Ex. 2.)

In support of its motion for summary judgment, defendant submits several written evaluations of plaintiff's job performance which were provided to Otero by Licursi and various other NYCTA employees. While plaintiff disputes the fairness and propriety of these evaluations,[2] she does not dispute that they were provided to Otero.

On March 8, 1995, Helene Licursi gave plaintiff her first assignment—the development of a report on Surface Ridership Reporting Subsystem User Requirements, which would eventually be submitted to the Office of Management and Budget. In a memorandum dated June 14, 1995, Licursi informed Otero that plaintiff's performance on the assignment had been unsatisfactory and formally requested his approval to terminate plaintiff's provisional employment. In the memorandum, Licursi states that plaintiff's initial and final drafts were unsatisfactory for a variety of reasons. Specifically, Licursi found plaintiff's final draft too long, overdue, and incomplete. Licursi further states that she found plaintiff's performance unsatisfactory because, among other things, she was not focused, had difficulty taking directions and insisted upon doing things her way, could not prioritize her daily tasks, was defensive and took suggestions as criticism, and required extensive monitoring to complete her assignment. (Def.'s 56.1 Stat., Ex. 3.)

In her first three months of employment, plaintiff also worked on an assignment with Martin Walker, a Caucasian, non-Jewish male in his thirties, who was employed by the NYCTA as a Computer Specialist, Level III. In a memorandum dated June 30, 1995, written in response to a request from Otero, Walker provides Otero with an unsatisfactory evaluation of plaintiff's performance on that assignment. Walker states that plaintiff's performance was below average for an employee of her

---

**2.** Specifically, plaintiff contends that "[t]he alleged, recurrent deficiencies in [her] performance involved unfair performance reviews entered into her file which were made without notice to her and therefore not giving her an opportunity to respond." (Pl.'s 56.1 Stat. at ¶ 3.) Plaintiff further contends that several reviews were improperly issued because they were written many weeks or months after she had completed the assignment being reviewed. (*Id.* at ¶¶ 6, 11.) Plaintiff also disputes many of the comments about her performance on specific assignments; for instance, she contends that she was given an unreasonable deadline on one assignment, (*id.* at ¶ 11), and that she received satisfactory feedback on portions of other assignments. (*Id.* at ¶¶ 3, 7.)

grade, that she did not demonstrate an ability to implement technical solutions with minimal supervision, that her communication skills were poor, that she required multiple, detailed directions before she could demonstrate an understanding of an assignment, and that she was overly defensive before and during reviews of her work, making it difficult to give her direction.[3] (Def.'s 56.1 Stat., Ex. 4.)

On July 5, 1995, Otero issued a written official warning notice to plaintiff, which stated: "Based on performance ratings that I have received on your work, I am officially giving you notice that if your work does not improve, I will terminate your services with New York City Transit." The notice bears Otero's signed initials and was signed by plaintiff on July 5, 1995 as received, and by Licursi on the same date as witnessed. (Def.'s 56.1 Stat., Ex. 1.) In a memorandum to files also dated July 5, 1995, Otero states that plaintiff was orally advised of the following when given her official warning notice: (1) that she must listen to her manager and follow his or her instructions and that she must not modify any task without first obtaining her manager's clearance; (2) that she must not be overly defensive; (3) that she must complete her assignments on time and, in order to accomplish this, must insure that she understands all directions given to her; (4) and that Otero could be approached if she had further difficulties with her manager. (Def.'s 56.1 Stat., Ex. 5.) Plaintiff concedes that she received the official warning notice from Otero but contends that the notice was improperly based on unfair evaluations of her performance and that it was provided to her without notice, an opportunity to respond, or further elaboration on how her work could improve. (Pl.'s 56.1 Stat. at ¶ 4.)

At an unspecified point during her employment at the NYCTA, plaintiff performed an assignment under the supervision of Soossan Salmassi. In a memorandum to Otero dated August 4, 1995, written pursuant to an earlier conversation with Otero, Salmassi provides an unsatisfactory evaluation of plaintiff's performance "during the short period she worked" for Salmassi. In the memorandum, Salmassi states that plaintiff did not complete the assignment by the deadline she was given and did not perform the assignment correctly. Salmassi further states that she was forced to complete the assignment herself due to plaintiff's unsatisfactory work. (Def.'s 56.1 Stat., Ex. 6.)

In a memorandum dated August 30, 1995, Licursi provided Otero with a second negative evaluation of plaintiff's performance and recommended that plaintiff's provisional employment be terminated because her work had not improved since she was given the official warning notice on July 5, 1995. Licursi informed Otero that plaintiff's performance on an assignment to eliminate incomplete batches of unused farecards from the NYCTA's farecard batch record reporting system had been unsatisfactory because she failed to follow instructions, did not meet deadlines, was unable to perform work appropriate for her title, and, when she was able to complete an assignment, submitted poor work. (Def. 56.1 Stat., Ex. 7.) Plaintiff disputes Licursi's account of her performance on this assignment. (Pl.'s 56.1 Stat. at ¶¶ 12–14.)

By memorandum dated September 1, 1995, Licursi informed plaintiff that her provisional appointment with the NYCTA as a Computer Specialist, Level II, was terminated, effective the close of business on September 1, 1995. While a copy of the memorandum was sent to Otero, it is un-

---

**3.** Walker further states that, while plaintiff displayed patience in analyzing complex problems and often derived innovative solutions, her grasp of a requirement was never complete and that her work had a high incidence of errors, requiring a high level of supervision at each stage of an assignment. (Def.'s 56.1 Stat., Ex. 4.)

clear whether Licursi sought Otero's approval before terminating plaintiff. (Def.'s 56.1 Stat., Ex. 2.)

On December 4, 1995, plaintiff filed a complaint with the Equal Employment Opportunity Commission (the "EEOC"), alleging discrimination on the basis of her race, religion, and age. On September 4, 1996, the EEOC dismissed plaintiff's complaint and issued a right-to-sue letter, which plaintiff did not receive because it was mailed to an out-of-date address. On March 4, 1997, the EEOC mailed a second right-to-sue letter to plaintiff at her correct address. On June 3, 1997, plaintiff commenced this action, seeking declaratory judgment, back pay, liquidated damages, front pay, fringe benefits and wages, attorneys fees and costs, and compensatory damages, as well as a permanent injunction restraining defendant from continuing its allegedly discriminatory practices and policies.

In the complaint, plaintiff alleges that the NYCTA engaged in unlawful employment practices in violation of Title VII, the ADEA, and § 1981 by discriminating against her on the basis of her race, religion, and age. Specifically, plaintiff alleges that defendant discharged her without justification because she was Caucasian, Jewish, and over fifty-years old and retained a significantly younger, less qualified employee in her position.[4] Plaintiff

further alleges that defendant treated her differently than other employees who were not Caucasian, not Jewish, and under forty-years of age, and that she was continually harassed by Otero and Licursi, both of whom are non-Jewish.[5]

In support of her claims of discriminatory discharge and disparate treatment, plaintiff points to the allegedly disparate treatment of Debbie English, the one allegedly "token" black employee in her division of approximately fifteen employees, who was non-Jewish and in her thirties. Plaintiff testified at her deposition that English had less hands-on experience and technical skills than plaintiff, that English took longer in submitting her assignments, and that many of English's assignments were deemed unsatisfactory. Plaintiff further testified that, despite English's alleged lack of qualifications, she was promoted from Computer Specialist, Level II, to Computer Specialist, Level III. Plaintiff did not know how long English had been employed by the NYCTA before her promotion or how old English was at the time of her promotion. (Pl.'s 56.1 Stat., Ex. O.)

Plaintiff also points to what she contends is a "glass ceiling" for Jewish employees in their forties and fifties. In her deposition testimony, plaintiff cited the alleged experiences of the five other Jewish employees who held the same position of Computer Specialist, Level II, had the

---

**4.** Plaintiff does not, however, identify this individual in the complaint or in her submissions relating to the instant motion.

**5.** The complaint also alleges employment discrimination based on defendant's failure to promote plaintiff to the position of Computer Specialist, Level III. (Compl. ¶ 13.) Plaintiff, however, concedes that she was unable to seek a promotion before she had completed six months of employment at the NYCTA and, because she was terminated at that point, did not seek any promotion. (Pl.'s Opp'n Mem. at 10.) In order to state a prima facie claim of employment discrimination based on an alleged discriminatory failure to promote, a plaintiff must allege that she " 'applied for and was qualified for a job for which the employer was seeking applicants.' " *Brown v. Coach Stores, Inc.,* 163 F.3d 706, 709 (2d

Cir.1998) (quoting *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973)). Moreover, a plaintiff must allege that "she or he applied for a specific position or positions and was rejected therefrom, rather than merely asserting that on several occasions she or he generally requested promotion." *Id.* at 710. Because plaintiff concedes that she was not eligible for and in fact sought no promotions during her employment at the NYCTA, the complaint fails to allege a prima face claim of employment discrimination based on defendant's alleged discriminatory failure to promote plaintiff. Accordingly, defendant's motion for summary judgment dismissing plaintiff's failure to promote claim is granted, and I do not further address that claim in this decision.

same training, experience, and job skills, and were roughly the same age as plaintiff. Plaintiff testified that these Jewish employees were consistently denied promotions and treated poorly by their non-Jewish managers. Plaintiff, however, conceded in her deposition testimony that these five Jewish employees continued to work for the NYCTA after her own termination. (Pl. 56.1 Stat., Exs. F, P; Def.'s Reply Aff., Ex. 4.)

In her deposition testimony, plaintiff also cited Martin Walker's employment at the NYCTA in the position of Computer Specialist, Level III, as an example of religious and age discrimination, arguing that he did not have the skills or training required for the position. (Pl. 56.1 Stat., Exs. F, P.) In her deposition testimony, plaintiff also noted, without drawing any further conclusions, that every NYCTA employee or supervisor who commented negatively on her performance was not Jewish. (Pl.'s 56.1 Stat., Ex. P.)

## DISCUSSION

Summary judgment under Rule 56(c) of the Federal Rules of Civil Procedure is proper if "the pleadings, depositions, answers to interrogatories, and admissions on file together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The moving party has the burden of demonstrating the absence of any disputed material facts, and the court must resolve all ambiguities and draw all inferences in favor of the party against whom summary judgment is sought. *See Thompson v. Gjivoje*, 896 F.2d 716, 720 (2d Cir.1990).

The showing needed on summary judgment reflects the burden of proof in the underlying action. The court must consider "the actual quantum and quality of proof" demanded by the underlying cause of action and must consider which party must present such proof. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 254, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Therefore, where the ultimate burden of proof is on the nonmoving party, the moving party meets his initial burden for summary judgment by " 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). To survive the motion, the nonmoving party must then "make a showing sufficient to establish the existence of [the challenged] element essential to [that party's] case." *Id.* at 322, 106 S.Ct. 2548.

While the court views the evidence in the light most favorable to the nonmoving party, *see O'Brien v. National Gypsum Co.*, 944 F.2d 69, 72 (2d Cir.1991), "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." *Anderson*, 477 U.S. at 247–48, 106 S.Ct. 2505. Rather, summary judgment is appropriate "[w]hen the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

■ Title VII makes it unlawful for an employer to "fail or refuse to hire or to discharge any individual or otherwise to discriminate against any individual with regard to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e–2(a)(1). The ADEA prohibits employers from discriminating in hiring, discharge, or the setting of "compensation, terms, conditions or privileges of employment" by reason of an employee's age. 29 U.S.C. § 623(a)(1). Protection under the ADEA extends only to individuals who are over forty-two years old. *See id.* § 631(a). Claims under the ADEA and § 1981 are analyzed under the same framework as claims brought pursuant to Title VII. *See Raskin v. Wyatt Co.*, 125 F.3d 55, 60 (2d

Cir.1997) (ADEA); *McLee v. Chrysler Corp.*, 109 F.3d 130, 134 (2d Cir.1997) (§ 1981 and Title VII); *Woroski v. Nashua Corp.*, 31 F.3d 105, 107 (2d Cir.1994) (ADEA and Title VII).

Employment discrimination cases brought under Title VII fall within one of two categories: "pretext" and "mixed-motive" cases. *See Tyler v. Bethlehem Steel Corp.*, 958 F.2d 1176, 1180 (2d Cir.1992). In pretext cases, a court uses the burden-shifting analysis first articulated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). In mixed-motive cases, courts use the analysis set forth in *Price Waterhouse v. Hopkins*, 490 U.S. 228, 109 S.Ct. 1775, 104 L.Ed.2d 268 (1989).[6] Specifically, in mixed-motive cases, "if the plaintiff establishes that a prohibited discriminatory factor played a 'motivating part' in a challenged employment decision, the burden shifts to the employer to prove by a preponderance of the evidence that it would have made the same decision anyway." *Raskin*, 125 F.3d at 60.

Plaintiff does not specify whether she believes her case should fall within the "pretext" or "mixed-motive" category. As the Second Circuit stated in *Raskin*, "[t]o warrant a *Price Waterhouse* burden shift, the plaintiff must initially show that an impermissible criterion was in fact a motivating or substantial factor in the employment decision." *Raskin*, 125 F.3d at 60. The Second Circuit went on to state that,

[b]ecause the plaintiff must show that the evidence is sufficient to allow a fact finder to infer both permissible and discriminatory motives, the plaintiff's initial burden in a *Price Waterhouse* mixed-motive case is heavier than the de minimis showing required to establish a prima facie *McDonnell Douglas* case. The types of indirect evidence that suffice in a pretext case to make out a prima facie case—or even to carry the ultimate burden of persuasion—do not suffice, even if credited, to warrant a *Price Waterhouse* burden shift. Evidence potentially warranting a *Price Waterhouse* burden shift includes, inter alia, policy documents and evidence of statements or actions by decisionmakers that may be viewed as directly reflecting the alleged discriminatory attitude. In short, to warrant a mixed-motive burden shift, the plaintiff must be able to produce a "smoking gun" or at least a "thick cloud of smoke" to support his allegations of discriminatory treatment.

*Id.* Here, there are no policy documents, statements, or actions that directly reflect an alleged discriminatory attitude. Accordingly, there is no basis for a *Price Waterhouse* burden shift, and the pretext analysis is the proper one.

Under the pretext framework set forth in *McDonnell Douglas* and its progeny, the plaintiff bears the burden of initially proving by a preponderance of the evidence a prima facie case of discrimination. *See St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993); *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 252–53, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981); *McDonnell Douglas*, 411 U.S. at 802, 93 S.Ct. 1817. In order to establish a prima facie case of discriminatory discharge, the plaintiff must show (1) that she was a member of a protected class or age group, (2) that she was qualified for the position, (3) that she was discharged, and (4) that her discharge occurred in circumstances giving rise to an inference of discrimination on the basis of

---

**6.** I recognize that the impact of *Price Waterhouse* has been modified by the enactment of the Civil Rights Act of 1991 with respect to the remedies available to a Title VII plaintiff when the plaintiff proves unlawful discrimination and the employer is able to show that it would have made the same decision in the absence of the impermissible factor. *See* Civil Rights Act of 1991, P.L. 102–166, § 107(b), codified at 42 U.S.C. § 2000e–5(g). That modification, however, does not disturb the Supreme Court's discussion of burdens of proof. *See Fields v. New York State Office of Mental Retardation and Developmental Disabilities*, 115 F.3d 116 (2d Cir.1997).

her membership in that class or age group. *See McDonnell Douglas,* 411 U.S. at 802, 93 S.Ct. 1817; *Rosen v. Thornburgh,* 928 F.2d 528, 531 (2d Cir.1991); *Meiri v. Dacon,* 759 F.2d 989, 995 (2d Cir.1985).

In assessing the inferences that may be drawn from the circumstances surrounding the termination of employment, the court must be alert to the fact that " '[e]mployers are rarely so cooperative as to include a notation in the personnel file' that their actions are motivated by factors expressly forbidden by law." *Chambers v. TRM Copy Centers Corp.,* 43 F.3d 29, 37 (2d Cir.1994) (quoting *Ramseur v. Chase Manhattan Bank,* 865 F.2d 460, 465 (2d Cir. 1989)). Because an employer who discriminates is unlikely to leave a "smoking gun" attesting to discriminatory intent, a victim of discrimination is seldom able to prove her claim by direct evidence and is usually constrained to rely on circumstantial evidence. *See Chambers,* 43 F.3d at 37; *Rosen,* 928 F.2d at 533. Because employers rarely leave direct evidence of discriminatory intent, a court must scrutinize all of the available evidence in search of circumstantial proof to rebut the employer's explanation for its actions. *See Hollander v. American Cyanamid Co.,* 895 F.2d 80, 85 (2d Cir.1990).

Circumstances contributing to a permissible inference of discriminatory intent may include the employer's continuing, after discharging the plaintiff, to seek applicants from persons of the plaintiff's qualifications to fill that position, *see, e.g., Meiri,* 759 F.2d at 995–96; or the employer's criticism of the plaintiff's performance in ethnically degrading terms, *see, e.g., Lopez v. S.B. Thomas, Inc.,* 831 F.2d 1184, 1189 (2d Cir.1987), *overruled on other grounds by Patterson v. McLean Credit Union,* 491 U.S. 164, 109 S.Ct. 2363, 105 L.Ed.2d 132 (1989); or its invidious comments about others in the employee's protected group, *see, e.g., Ostrowski v. Atlantic Mut. Ins. Cos.,* 968 F.2d 171, 182 (2d Cir.1992); or the more favorable treatment of employees not in the protected group, *see, e.g., Wash-*ington v. Garrett, 10 F.3d 1421, 1434 (9th Cir.1993) (in a supposed "reduction in force," the plaintiff, a black, was the only person to lose her job); or the sequence of events leading to the plaintiff's discharge, *see, e.g., Ostrowski,* 968 F.2d at 183; or the timing of the discharge, *see, e.g., Dister v. Continental Group, Inc.,* 859 F.2d 1108, 1115 (2d Cir.1988).

The burden that an employment discrimination plaintiff must meet in order to defeat summary judgment at the prima facie stage is de minimis. *See Raskin,* 125 F.3d at 60; *McLee,* 109 F.3d at 134–35; *Cronin v. Aetna Life Ins. Co.,* 46 F.3d 196, 203–04 (2d Cir.1995); *Chambers,* 43 F.3d at 37. Since the court, in deciding a motion for summary judgment, is not to resolve issues of fact, its determination of whether the circumstances "giv[e] rise to an inference" of discrimination must be a determination of whether the proffered admissible evidence shows circumstances that would be sufficient to permit a rational finder-of-fact to infer a discriminatory motive. It is not the province of the court itself to decide what inferences should be drawn. *See Chambers,* 43 F.3d at 38.

If the plaintiff establishes a prima facie case, a presumption of discrimination arises, and the burden then shifts to the defendant " 'to articulate some legitimate, nondiscriminatory reason for the employee's [discharge.]' " *Rosen,* 928 F.2d at 531 (quoting *McDonnell Douglas,* 411 U.S. at 802, 93 S.Ct. 1817). This is merely a burden of articulation; the burden of persuasion remains on the plaintiff throughout the *McDonnell–Douglas* framework. *See Woroski,* 31 F.3d at 108; *Ruane v. Continental Cas. Co.,* No. 96 Civ. 7153, 1998 WL 292103, at *8 (S.D.N.Y. June 3, 1998). "Any legitimate, non-discriminatory reason will rebut the presumption triggered by the prima facie case. The defendant need not persuade the court that it was actually motivated by the proffered reasons." *Fisher v. Vassar College,* 114 F.3d 1332, 1335–36 (2d Cir.1997), *cert. denied,* ——

U.S. ——, 118 S.Ct. 851, 139 L.Ed.2d 752 (1998).

If the defendant is able to provide evidence of a nondiscriminatory basis for the discharge, then the presumption of discrimination "simply drops out of the picture." *St. Mary's Honor Ctr. v. Hicks,* 509 U.S. 502, 510–11, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993). The plaintiff may then prevail only if she can show by a preponderance of the evidence that the employer's proffered explanations are pretextual, "either because the pretext finding itself points to discrimination or because other evidence in the record points in that direction—or both." *Fisher,* 114 F.3d at 1339. A plaintiff does not win merely by proving the asserted reason to be false; rather, an employer's proffered reason must be false and its real reason, unlawful. *See Hicks,* 509 U.S. at 511, 515–16, 113 S.Ct. 2742; *Fisher,* 114 F.3d at 1338–39; *Quaratino v. Tiffany & Co.,* 71 F.3d 58, 64 (2d Cir.1995). In other words, the burden-shifting framework does not alter the fact that the plaintiff at all times bears the ultimate burden of persuading the trier of fact that the defendant unlawfully discriminated against her. *See Hicks,* 509 U.S. at 511, 113 S.Ct. 2742; *Quaratino,* 71 F.3d at 64. With the presumption no longer operating, "[t]he question becomes the same question asked in any other civil case: Has the plaintiff shown, by a preponderance of the evidence, that the defendant is liable for the alleged conduct?" *Fisher,* 114 F.3d at 1336.

In employment discrimination cases, where liability often turns on the issue of intent, courts should approach a motion for summary judgment with special caution. *See Gallo v. Prudential Residential Services, L.P.,* 22 F.3d 1219, 1224 (2d Cir. 1994). That a court should approach a discrimination case with a heightened duty of care, however, does not mean that summary judgment is unavailable in such cases. *See McLee v. Chrysler Corp.,* 38 F.3d 67, 68 (1994). When an employer provides convincing evidence explaining its conduct, and the plaintiff's case rests on conclusory allegations of discrimination, the court may properly conclude that there is no genuine issue of material fact and grant summary judgment to the employer. *See Meloff v. New York Life Ins. Co.,* 51 F.3d 372, 375 (2d Cir.1995).

A plaintiff cannot meet her burden of opposing a summary judgment motion in an employment discrimination case through reliance on unsupported assertions. *See Goenaga v. March of Dimes Birth Defects Found.,* 51 F.3d 14, 18 (2d Cir.1995); *Cronin v. Aetna Life Ins. Co.,* 46 F.3d 196, 203 (2d Cir.1995); *Chambers,* 43 F.3d at 37; *see also Bryant v. Maffucci,* 923 F.2d 979, 982 (2d Cir.1991) (summary judgment motion "will not be defeated merely ... on the basis of conjecture or surmise"). Once the moving party has made a properly supported showing sufficient to suggest the absence of any genuine issue as to a material fact, the nonmoving party, in order to defeat summary judgment, must come forward with evidence that would be sufficient to support a jury verdict in his favor. *See Goenaga,* 51 F.3d at 18. The party opposing summary judgment may not rely simply on conclusory statements or on contentions that the affidavits supporting the motions are not credible, *see Goenaga,* 51 F.3d at 18, or "upon the mere allegations or denials of the adverse party's pleading," Fed. R.Civ.P. 56(e).

In the present case, the parties do not contest plaintiff's membership in a protected class or that she suffered an adverse employment decision. Defendant, however, argues that plaintiff has not established a prima facie case of discrimination because she has not shown that she was qualified for the position of Computer Specialist, Level II, or that her discharge occurred in circumstances giving rise to an inference of discrimination. Defendant further argues that, even if plaintiff has established a prima facie case of discrimination, it has articulated a legitimate, nondiscriminatory reason for her termination.

■ While a plaintiff's burden of establishing a prima facie case of discrimination is de minimis, she cannot meet this burden through conclusory or unsupported assertions. *See Goenaga,* 51 F.3d at 18. In this case, plaintiff has submitted no evidence, not even her own sworn affidavit, in support of her conclusory assertion that she performed her work satisfactorily.[7] Rather, the record in this case shows that plaintiff received numerous unsatisfactory evaluations of her work performance from at least four different NYCTA employees and supervisors. Moreover, as plaintiff herself concedes, she received an official warning on July 5, 1995, informing her that her employment would be terminated if her work did not improve.

In her Rule 56.1 statement in response to the instant motion, plaintiff disputes the fairness of these negative evaluations and argues that many of the evaluations were improperly issued. In certain circumstances, a genuine issue of material fact regarding a plaintiff's qualifications for the position may be created where the plaintiff claims that his or her performance was not properly or fairly evaluated. For instance, in *Rosen v. Thornburgh,* 928 F.2d 528 (2d Cir.1991), the plaintiff alleged that he was not afforded a fair opportunity to satisfy the Drug Enforcement Agency's driving proficiency requirement, a prerequisite for the position of a special agent with the Agency, because an anti-Jewish animus affected the defendant's testing and evaluation of his driving skills. *See id.* at 533–34. In support of his allegations, Rosen provided a variety of circumstantial evidence which showed not only his competence as a driver,[8] but also that the defendants' evaluation of his skills "was, at most, a perfunctory exercise." *Id.* at 534. The Second Circuit held that Rosen's well supported allegations created a genuine issue of material fact regarding his qualifications for the position of special agent and, accordingly, that he had produced sufficient evidence to survive the defendant's motion for summary judgment. *See id.*

The instant case is distinguishable from *Rosen* because plaintiff, unlike Rosen, has provided no circumstantial evidence in support of her claims that she performed her job satisfactorily or that the negative evaluations of her job performance were unfair or improperly issued. As a result, there is no "competing evidence" to be weighed by the finder-of-fact. *See id.* Moreover, many of plaintiff's factual disputations appear to be rationalizations for her allegedly unsatisfactory performance rather than demonstrations of any genuine issue of material fact to be tried.[9] *See McLee,* 109 F.3d at 135 (finding that many of plaintiff's disputations were rationalizations for his deficient performance which did not raise a genuine issue of material fact); *see also Grady v. Affiliated Central, Inc.,* 130 F.3d 553, 561 (2d Cir.1997) (in light of the entire record, factual disputes that plaintiff points to are entirely immaterial), *cert. denied,* —— U.S. ——, 119 S.Ct. 349, 142 L.Ed.2d 288 (1998); *Shabazz–Allah v. Guard Management Serv.,* No. 97 Civ. 8194, 1999 WL 123641, at *3 (S.D.N.Y. Mar.8, 1999) (finding that where "defen-

---

7. The sole evidence that plaintiff has submitted in support of her assertion that she performed her work satisfactorily is the weekly status reports that she drafted and provided to Otero and Licursi during July and August 1995. Plaintiff's own written summaries of her own work during that period, however, do not constitute reliable and independent evidence of her satisfactory work.

8. This circumstantial evidence included the affidavit of a third party attesting to his exceptional driving proficiency. *See id.* at 534.

9. For instance, plaintiff contends that she was given an unreasonable deadline to complete the assignment for Soosan Salmassi, (Pl. 56.1 Stat. at ¶ 11), and that when she exercised the "wide latitude for independent and initiative" required for the position of Computer Specialist, Level II, Licursi misinterpreted her actions. (*Id.* at ¶ 8.) In disputing Licursi's account of her performance on the assignment to eliminate unused farecards, plaintiff further notes that she "always followed instructions even if they were not clear." (*Id.* at ¶¶ 12, 13, 14.)

dant ha[d] amassed a significant quantity of evidence detailing plaintiff's tardiness, the complaints ... clients lodged against him, and his repeated failure to comply with established [company] policies," plaintiff could defeat summary judgment only by coming forward with evidence that would be sufficient to support a jury verdict in his favor).

■ However, even if assuming *arguendo* that, viewing the evidence in the light most favorable to plaintiff, plaintiff has made a prima facie showing that she was qualified for the position, she has not met her de minimis burden of showing circumstances that would permit a rational fact finder to infer invidious discrimination. Plaintiff provides no direct proof of a discriminatory animus, such as invidious remarks by NYCTA officials. Moreover, plaintiff has presented no circumstantial evidence from which a rational finder-of-fact could infer that defendant discriminated against her on the basis of her race, religion, or age.

Plaintiff attempts to raise an inference of discrimination by showing that defendant treated a similarly situated employee of a different race, religion, and age, Debbie English, more favorably than it treated plaintiff. Plaintiff contends that English, the one allegedly "token" black employee at AFC Systems, who was not Jewish and in her thirties, was treated more favorably than plaintiff because she was promoted to Computer Specialist, Level III, even though she had less experience than plaintiff, took longer to complete her assignments, and produced unsatisfactory work.

" 'The fourth element of a prima facie case may be proven by showing that a similarly situated individual not in [plaintiff's] protected group ... was treated differently.' " *Jobe v. Teachers' Retirement Sys. of N.Y. City,* No. 95–CV–5302, 1999 WL 243626, at \*5 (E.D.N.Y. Apr.22, 1999) (quoting *Tramble v. Columbia Univ.,* No. 97 Civ. 1271, 1999 WL 61826, at \*5 (S.D.N.Y. Feb. 10, 1999)); *see also Shumway v. United Parcel Serv., Inc.,* 118 F.3d 60, 63 (2d Cir.1997); *Hargett v. National Westminster Bank,* 78 F.3d 836, 839 (2d Cir.1996). However, "[a]lthough the ultimate burden in making a prima facie case is slight, the issue of whether fellow employees are similarly situated is somewhat strict." *Jobe,* 1999 WL 243626, at \*5. "To be 'similarly situated,' the individuals with whom [a plaintiff] attempts to compare herself must be similarly situated in all material respects." *Shumway,* 118 F.3d at 64. More specifically, courts in this Circuit have stated:

> Employees are not 'similarly situated' merely because their conduct might be analogized. Rather, in order to be similarly situated, other employees must have reported to the same supervisor as the plaintiff, must have been subject to the same standards governing performance evaluation and discipline, and must have engaged in conduct similar to the plaintiff's, without such differentiating or mitigating circumstances that would distinguish their conduct or the appropriate discipline for it.

*Francis v. Runyon,* 928 F.Supp. 195, 203 (E.D.N.Y.1996); *see also Jobe,* 1999 WL 243626, at \*5.

Here, the record provides no basis for plaintiff's claim that she and Debbie English were "similarly situated in all material respects." *Shumway,* 118 F.3d at 64. Plaintiff conceded in her deposition testimony that English had been employed by the NYCTA for a longer period than plaintiff. By contrast, plaintiff, as a provisional rather than a permanent employee, was not eligible for any promotions during her first six months of employment and in fact had sought no promotions during her employment at the NYCTA. English thus is not "similarly situated" to plaintiff in all material respects, and plaintiff may not rely on English to raise an inference of discrimination. Moreover, other than her own conclusory and unsubstantiated statements in her deposition testimony, plaintiff offers no evidence in support of her allegations that English was treated more favor-

ably or had inferior training and skills. *Cf. Henry v. Daytop Village, Inc.*, 42 F.3d 89, 96–97 (2d Cir.1994) (former employee failed to produce evidence sufficient to create a genuine issue of material fact that she was disciplined more harshly than similarly situated white and/or male employees where evidence consisted of former employee's uncorroborated allegations).

Plaintiff also attempts to raise an inference of discrimination by pointing to the experiences of the five other employees who held the position of Computer Specialist, Level II, and were, like plaintiff, Jewish and in their forties and fifties. Plaintiff contends that defendant's failure to promote these employees, despite their allegedly excellent qualifications and skills, suggests that there is a "glass ceiling" at the NYCTA for Caucasian, Jewish employees in their forties and fifties. Other than her own deposition testimony, however, plaintiff offers no evidence in support of her conclusory allegations regarding the allegedly disparate treatment of these employees or their allegedly superior qualifications. Moreover, plaintiff conceded at her deposition that, although these employees worked for the same supervisors that she did, they continued to work for the NYCTA after her own termination and had not been terminated from that employment. Defendant's continued employment of a significant number of individuals who are roughly the same age as plaintiff and who belong to the same racial and religious groups as plaintiff undercuts any inference that plaintiff's termination was discriminatory. *Cf. Chambers*, 43 F.3d at 38 (noting that varied ethnic makeup of workforce may justify inference that employer had no discriminatory animus).

■ Another factor strongly suggests that invidious discrimination on the basis of plaintiff's race or age was unlikely. As the Second Circuit stated in *Grady v. Affiliated Central, Inc.*, 130 F.3d 553, 560 (2d Cir.1997), "when the person who made the decision to fire was the same person who made the decision to hire, it is difficult to

impute to her an invidious motivation that would be inconsistent with the decision to hire. This is especially so when the firing has occurred only a short time after the hiring." *Id.* at 560; *see also Shabazz–Allah*, 1999 WL 123641, at *4 (plaintiff hired and fired by same person within two years); *McKinney v. Lanier Worldwide, Inc.*, No. 94 Civ. 8139, 1998 WL 677544, at *5 (S.D.N.Y. Sept.29, 1998) (same); *Dedyo v. Baker Eng'g N.Y., Inc.*, No. 96 Civ. 7142, 1998 WL 9376, at *3 (S.D.N.Y. Jan.13, 1998) (plaintiff hired and fired by same person within three years). Here, Helene Licursi, the manager who made the decision to fire plaintiff less than six months after she was hired, also played a significant role in the decision to hire her. Moreover, as plaintiff conceded at her deposition, Licursi was a Caucasian woman in her sixties at the time she made the decisions to hire and fire plaintiff. "Although it is not impossible for an individual in a protected class to discriminate against others who are also members of that class, ... the inference set forth in *Grady* is even more weighty where the person who both hired and fired the plaintiff is also a member of the same protected class[ ] as the plaintiff." *Shabazz–Allah*, 1999 WL 123641, at *4.

Plaintiff now contends that it is inappropriate to apply the same-actor inference because plaintiff was not actually hired by Licursi or Robert Otero but, instead, was hired by an individual named Toni Young. Licursi, however, testified at her deposition that she was the manager who interviewed plaintiff and made the recommendation to hire her. Moreover, the evidence suggests that both Licursi and Otero, acting in their respective capacities as the Deputy Director and Acting Director of AFC Systems, were involved in the screening and approval of employee applicants. The evidence further shows that Licursi played a significant role in both the decision to hire plaintiff and the decision to fire plaintiff. *Cf. Brown v. C.S.C. Logic, Inc.*, 82 F.3d 651, 658 (5th Cir.1996) ("The

fact that the actor involved in both employment decisions is also a member of the protected class only enhances the ['same actor'] inference.").

Accordingly, plaintiff has not met her de minimis burden of showing circumstances that would permit a rational finder-of-fact to infer that her termination was motivated by discrimination on the basis of her race, religion, or age.

■ Even assuming *arguendo* that plaintiff has established a prima facie case of discrimination, defendant has offered a legitimate, nondiscriminatory reason for terminating plaintiff's provisional employment. As discussed above, defendant has provided substantial evidence showing that plaintiff was terminated due to recurring deficiencies in her job performance. Accordingly, the burden shifts to plaintiff to demonstrate by a preponderance of the evidence that defendant's presumptively valid explanation for her termination was merely a pretext for discrimination. In the summary judgment context, "this means 'that the plaintiff must establish a genuine issue of material fact either through direct, statistical, or circumstantial evidence as to whether the employer's reason for discharging her is false and as to whether it is more likely that a discriminatory reason motivated the employer to make the adverse employment decision.'" *Kerzer v. Kingly Mfg.*, 156 F.3d 396, 401 (2d Cir.1998) (quoting *Gallo*, 22 F.3d at 1225). Furthermore, the court of appeals has cautioned that, in order to survive a motion for summary judgment, the plaintiff must present more than "conclusory allegations of discriminations"; instead, she must offer "concrete particulars" to substantiate her claim. *Meiri*, 759 F.2d at 998.

Plaintiff has not satisfied this burden. As discussed above, other than her own general and unsubstantiated accusations, plaintiff has presented no evidence that would allow a rational finder-of-fact to infer discrimination on the basis of plaintiff's race, religion, or age. *Cf. Goenaga*, 51

F.3d at 19 (noting that plaintiff "was not entitled to trial based on his speculative assertions on matters as to which he has admitted he had no knowledge and no evidence"). The Second Circuit has made clear that, "[i]f the plaintiff's evidence was barely sufficient to make out a prima facie case, it may not be sufficient to establish discrimination after the defendant has proffered a neutral rational." *Stern v. Trustees of Columbia Univ.*, 131 F.3d 305, 312 (2d Cir.1997); *see also McNulty v. New York City Dep't of Fin.*, No. 96 Civ. 2160, 1999 WL 187075, at *5 (S.D.N.Y. Apr.5, 1999). Here, even if the court were to assume *arguendo* that plaintiff has made a prima facie showing of discrimination, the evidence in support of that showing was "barely sufficient."

Moreover, even if plaintiff's factual disputations regarding the fairness or propriety of the negative evaluations of her job performance create a factual dispute as to whether defendant's actual reason for discharging her was her poor performance, "the creation of a genuine issue of fact with respect to pretext alone is not sufficient." *Grady*, 130. F.3d at 561; *see also Micari v. Trans World Airlines, Inc.*, 43 F.Supp.2d 275, 282 (E.D.N.Y.1999) ("Here, although there is a factual question with regard to the stated reason TWA fired Micari, there is not a scintilla of credible evidence proffered by the plaintiff that would allow a finder of fact to conclude that TWA fired Micari because of his disability."). There must also be evidence that would permit a rational fact finder to infer that the discrimination was actually motivated, in whole or in part, by discrimination on the basis of her race, religion, or age. *See Grady*, 130 F.3d at 561. Viewing all of the evidence in the light most favorable to her, plaintiff has failed to present such evidence. Plaintiff's unsupported statements that defendant did discriminate against her are not enough to defeat defendant's stated explanation for the firing. *See Micari*, 43 F.Supp.2d at 282. Accordingly, no reasonable jury could

find that defendant's decision to terminate plaintiff was motivated by racial, religious, or age bias, and the complaint must be dismissed.

Because plaintiff has failed to sustain her burden of persuasion under the *McDonnell Douglas* framework with respect to her § 1981 claim, I find it unnecessary to consider defendant's argument that her failure to allege an official policy or custom causing the denial of her constitutional rights constitutes an additional ground for dismissing the complaint.

### CONCLUSION

For the reasons set forth above, defendant's motion for summary judgment is granted and the complaint is dismissed.

SO ORDERED.