Linda **VERGARA** Plaintiff

v.

**YONKERS PUBLIC SCHOOLS &**
**Board of Education of City**
**of Yonkers Defendants**

**No. 02 CIV. 2950(SCR).**

United States District Court,
S.D. New York.

June 24, 2005.

Patricia Mulligan-Galligan, Yorktown Heights, NY, for Plaintiff.

Lawrence W. Thomas, Donoghue, Thomas, Auslander and Drohan, Scarsdale, NY, for Defendants.

## MEMORANDUM DECISION AND ORDER

ROBINSON, District Judge.

### I. Background

### a. Factual History

*Background*

Linda Vergara (the "Plaintiff"), a Puerto Rican female, was employed with the Yonkers Public School District (the "Defendant") for approximately twenty-two (22) years, both as a teacher and as an assistant principal. Plaintiff was employed

as an Assistant Principal for thirteen (13) years. In 1999, the Superintendent at the time, Dr. Andre Hornsby, asked Plaintiff to become a Principal in the district. Plaintiff's duties as Principal commenced in July 1999 for a three-year probationary period at the Enrico Fermi School. In or about August 2001, the new Superintendent, Joseph Farmer ("Superintendent Farmer"), advised Plaintiff that the Yonkers Board of Education (the "Defendant" or "Board") was denying her tenure. Plaintiff alleges that Superintendent Farmer stated the reason for her denial of tenure was because "the Board did not care for *her kind* of administrator." However, Deputy Superintendent Bernard Pierorazio (the "Deputy Superintendent") stated that he told Plaintiff she was not a "good fit" for the District. Subsequent to this conference, Plaintiff was reassigned to Lincoln High School as an Assistant Principal, commencing on or about August 6, 2001. On or about August 15, 2001, Plaintiff received a letter from Superintendent Farmer stating that he would not recommend to the Board that Plaintiff be granted tenure. Plaintiff received a letter, dated October 16, 2001 from the Executive Director of Personnel/Human Resources, that her employment in the District would end October 20, 2001.

Plaintiff received a rating of "effective" following her first year as Principal, and a rating of "very effective" following her second year. Additionally, during Plaintiff's second year as Principal, Enrico Fermi School's English Language test scores increased 41%.

Plaintiff learned of two other Hispanic female Administrators who were not granted tenure after their probationary periods of Assistant Principal and Principal and of a Hispanic woman in a similarly situated position who was informed that she was to be demoted to assistant principal with a freeze in salary, and if she did not accept this demotion, she would likely be terminated.[1] Conversely, white non-tenured Administrators were granted extensions to their probationary periods and later granted tenure at the end of those extensions.[2]

*Issues of Nepotism*

Defendant alleges that Plaintiff violated a Board of Education Resolution (the "Resolution") adopted on May 21, 1997. The Resolution stated that "[n]o person employed by the District shall hire, supervise, evaluate, promote, review or discipline any other employee who is a member of the same family." Following an investigation of and meeting with Plaintiff, school officials learned that Plaintiff's eldest daughter, Victoria Trotta, was employed as a college tutor, teaching at Enrico Fermi. Although Personnel hired Ms. Trotta, she worked under the direct supervision of Plaintiff. Plaintiff stated that when Ms. Trotta was hired, the Director of Personnel knew of Ms. Trotta's familial relationship with Plaintiff.

Defendant also alleges that Ms. Trotta was paid at a higher hourly rate than what

---

1. Ms. Ruiz, an assistant principal, was told that she was not a "good fit" for the District. She filed a complaint alleging gender and race discrimination before leaving the district. The Deputy Superintendent was aware of this complaint. Ms. Mitchell was terminated subsequent to receiving an "outstanding" performance rating.

2. One of the white Administrators, Christine Wagner, worked as a probationary Assistant Principal for two years and received an "unsatisfactory" performance rating for each of those two years. Subsequent to this, Ms. Wagner was transferred to the Enrico Fermi School, where she received a "satisfactory" rating and was later appointed as a non-tenured Principal at another school in the District.

the tutoring program designated as payment for tutors. However, other tutors listed on the time sheets with Ms. Trotta received the same amount. Under the Grant, tutors were to sign a sign-in sheet and list the students they tutored on a form entitled Targeted Information Sheet. The Deputy Superintendent was unable to find Ms. Trotta's Targeted Information Sheets during his investigation of Plaintiff; Ms. Trotta's sheets were the only ones he was unable to find.

Additionally, the Report Concerning the Employment of Family Members by Principal Linda Vergara (the "Report") stated that Plaintiff's second daughter, Gina Negron, was employed as a "peak performance technician" by Biofeedback Consultants, a company that worked in the Enrico Fermi Building. Plaintiff alleges that Ms. Negron volunteered at the Biofeedback Center, was never paid for her services, and at no point did Defendant question Ms. Negron's participation in the program. However, the Report stated that school officials did not know about Ms. Negron's employment and that Defendant approved Ms. Trotta, not Ms. Negron, to work as a peak performance technician.

At the meeting with school officials on May 15, 2001, Plaintiff was told that her daughters' employment in the District must end immediately. Plaintiff did not dispute this. However, Plaintiff did ask if her daughters could work in the district's summer program. She was told to contact Personnel regarding any future employment for her daughters, indicating that her daughters might be able to work for Defendant at some later date.

*Tutoring of Plaintiff's Daughter*

Plaintiff's younger daughter, Gina Negron, began accompanying Plaintiff to Enrico Fermi during the 2000–2001 school year. Plaintiff stated that Ms. Negron did not attend high school but was homeschooled after school and on the weekends.

A math teacher tutored Ms. Negron after school at Enrico Fermi, and Plaintiff paid him. However, Defendant alleges that Plaintiff told other teachers at Enrico Fermi to tutor Ms. Negron during school hours. The Deputy Superintendent learned that Ms. Negron was being tutored during school hours from other teachers within the school, but he could not remember the names of the teachers who told him, and he did not interview the alleged teachers who tutored Ms. Negron. Additionally, Christine Wagner, the Assistant Principal at Enrico Fermi, stated that Plaintiff told her to tutor Ms. Negron during the school day, which she did, and that other teachers at Enrico Fermi also tutored Ms. Negron during school hours.

b. **Procedural History**

On or about August 21, 2001, Plaintiff filed charges of sex, race, and national origin discrimination with the Equal Employment Opportunity Commission (the "EEOC"), as per Title VII's administrative requirements. The charges were re-filed with the EEOC after September 11, 2001. On or about January 18, 2002, Plaintiff received a Notice of Right to Sue from EEOC, which allowed Plaintiff to commence a civil action under Title VII within ninety (90) days of receipt of the Notice. On or about April 17, 2002, Plaintiff filed this complaint, arising under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, and under the New York State Executive Law, § 296, in the United States District Court for the Southern District of New York, seeking declaratory and injunctive relief and damages based on being discharged because of her sex, race, and national origin. On or about March 3, 2004, Defendant filed a Motion for Summary Judgment pursuant to Rule 56(c) of the Federal Rules of Civil Procedure.

## II. Standard of Review

Summary judgment is appropriate if there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *White v. ABCO Eng'g Corp.,* 221 F.3d 293, 300 (2d Cir.2000); FED. R. CIV. P. 56(c). "[T]he nonmoving party must come forward with 'specific facts showing that there is a *genuine issue for trial.*'" *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (emphasis in original); FED. R. CIV. P. 56(e). "There must also be no controversy as to the inferences to be drawn from [the evidentiary facts]." *Schwabenbauer v. Bd. of Ed.,* 667 F.2d 305, 313 (1981). In a summary judgment motion, "the court must resolve all ambiguities and draw all reasonable inferences in favor of [the non-moving party]." *Rosen v. Thornburgh,* 928 F.2d 528, 533 (2d Cir.1991) (quoting *Patrick v. LeFevre,* 745 F.2d 153, 158 (2d Cir.1984)) (internal quotations omitted). The Court must be especially cautious in granting a summary judgment motion in a discrimination case "because the employer's intent is often at issue and careful scrutiny may reveal circumstantial evidence supporting an inference of discrimination." *Belfi v. Prendergast,* 191 F.3d 129, 135 (2d Cir.1999).

In a Title VII action, the complainant "must carry the initial burden ... of establishing a *prima facie* case of ... discrimination." *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). The plaintiff establishes a *prima facie* case by showing that she "(1) was a member of a protected class; (2) was qualified for the position; (3) was discharged; and (4) the discharge occurred in circumstances giving rise to an inference of discrimination." *Rosen,* 928 F.2d at 532. *See also McLee v. Chrysler Corp.,* 109 F.3d 130, 134 (2d Cir.1997) (to defeat summary judgment, Plaintiff's burden at *prima facie* stage is *de minimis* ). Once the plaintiff establishes her *prima facie* case, the burden shifts to the defendant "to articulate some legitimate, nondiscriminatory reason for the employee's rejection." *McDonnell Douglas,* 411 U.S. at 802, 93 S.Ct. 1817. *See also Texas Dep't of Cmty. Affairs v. Burdine,* 450 U.S. 248, 254, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981) (the defendant's burden "is to rebut the presumption of discrimination by producing evidence that the plaintiff was rejected ... for a legitimate, nondiscriminatory reason."). This presumption does not shift the burden of persuasion, which rests with the plaintiff at all times. *See St Mary's Honor Ctr. v. Hicks,* 509 U.S. 502, 511, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993). If the defendant establishes "evidence of a nondiscriminatory basis of its action" the burden shifts back to the plaintiff, who bears the ultimate burden of "establish[ing] by [a] preponderance of the evidence that the nondiscriminatory reasons advanced for plaintiff's rejection are a pretext for discrimination." *Rosen,* 928 F.2d at 532; *see also Burdine,* 450 U.S. at 253, 101 S.Ct. 1089 ("The ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff.").

## III. Discussion

### a. Plaintiff has met her burden of establishing a *prima facie* case

The question before us is whether any genuine issues of material fact exist. Initially, we must determine whether Plaintiff has established a *prima facie* case of discrimination. First, Plaintiff must establish that she is a member of a protected class. An employer may not discharge an individual on the basis "of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e–2(a)(1) (2004).

This is uncontested; Plaintiff is a Puerto Rican female. Second, Plaintiff must show that she was qualified for the position from which she was discharged. In order for Plaintiff to show that she was qualified for the position, she merely needs to show that "she possesses the basic skills necessary for performance of [the] job." *Gregory v. Daly*, 243 F.3d 687, 696 (2d Cir.2001). Plaintiff was in Defendant's employ for approximately twenty-two years before being promoted to Principal of the Enrico Fermi School. During Plaintiff's probationary period as Principal, she received "effective" and "very effective" end-of-year ratings, with "very effective" being one rating below "outstanding." Additionally, while she was principal, the school's English Language standardized test scores increased by more than 40%. Thus, Plaintiff makes a credible showing that she performed her duties satisfactorily. *See McLee v. Chrysler Corp.*, 109 F.3d 130, 134 (2d Cir.1997) (the second element which the plaintiff must satisfy in establishing her *prima facie* case is that she was performing her duties satisfactorily). Third, Plaintiff must show that she was discharged. Plaintiff's termination from Yonkers Public Schools was effective October 20, 2001.

Finally, Plaintiff must show that the reason for her discharge gives rise to an inference of discrimination. Plaintiff can overcome this hurdle with circumstantial evidence. *See Rosen*, 928 F.2d at 533 ("A victim of discrimination is … seldom able to prove his or her claim by direct evidence and is usually constrained to rely on the cumulative weight of circumstantial evidence."). The Plaintiff alleges that the Superintendent told her that the District did not want "her kind" working in the school system. Although the statement "her kind" could have several connotations, the Court finds that it is a reason-able inference that the statement could refer to her racial, gender, or national original identity. Additionally, Plaintiff's end-of-year evaluation for the 2000–2001 school year shows that the "significant increase [in test scores, which improved by 41%] was due in part to [Plaintiff's] intense focus" and her performance exceeded expectation. Lastly, in her affidavit, Plaintiff listed two other Hispanic women, in non-tenured administrative positions, who were not granted tenure despite receiving high performance ratings, while white, non-tenured administrators were granted extensions to their probationary periods. Although Plaintiff's evidence is circumstantial, its cumulative effect does create an inference that discrimination was an impetus for Plaintiff's discharge. Therefore, taking the facts in the light most favorable to the plaintiff, Plaintiff has established her *prima facie* case, and the burden shifts to Defendant to provide a legitimate, nondiscriminatory basis for Plaintiff's discharge.

### b. Defendant's legitimate, nondiscriminatory basis for Plaintiff's termination

Defendant's only burden is "to articulate some legitimate, nondiscriminatory reason for the employee's" discharge. *McDonnell Douglas*, 411 U.S. at 802, 93 S.Ct. 1817. The defendant does not have to persuade this Court that the discharge was "actually motivated by the proffered reasons." *Burdine*, 450 U.S. at 254, 101 S.Ct. 1089. In New York, "a probationary employee may be discharged without a hearing and without a statement of reasons in the absence of any demonstration that dismissal was for [a] constitutionally impermissible purpose or in violation of statutory or decisional law." *York v. McGuire*, 63 N.Y.2d 760, 760, 480 N.Y.S.2d 320, 469 N.E.2d 838 (1984).[3] In

---

**3.** *See also Butler v. Abate*, 204 A.D.2d 171, 172, 612 N.Y.S.2d 19 (1st Dep't 1994) ("A

the instant case, Defendant did offer a legitimate, nondiscriminatory basis for Plaintiff's termination. Plaintiff's position was for a probationary three-year period, during which her employment could be terminated at any time.[4] The Deputy Superintendent stated that the reason for Plaintiff's termination was because Plaintiff's children worked for Defendant school district, in violation of Board of Education policy, and that Plaintiff's younger daughter was tutored by school staff during school hours.

Plaintiff's daughter, Victoria Trotta, was employed by the school district as a tutor and worked under the direct supervision of Plaintiff. An employee's direct supervision of a family member is in violation of the Resolution. Knowing or willful violation of this Resolution "may result in disciplinary action up to and including dismissal." The Deputy Superintendent stated that he was unable to find the Targeted Information Sheet for Ms. Trotta during the course of his investigation. She was the only tutor for whom he could not find such back-up material, which was a required part of the grant program. The program materials, which included an attendance sheet, a sheet listing the students tutored (the Targeted Information Sheet), and a cover sheet were to be turned into Plaintiff, the building principal, who then had to give the sheets to the central office. Additionally, Defendant alleged that various teachers tutored Plaintiff's younger daughter, Ms. Negron, during school hours.

### c. Plaintiff's burden of establishing, by a preponderance of the evidence, that Defendant's nondiscriminatory reasons are merely a pretext for discrimination

The trier of fact may look at "[P]laintiff's *prima facie* case, combined with sufficient evidence ... that the employer's asserted justification is false" to determine that Plaintiff was discharged in part because of discriminatory reasons. *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 148, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000). In defeating a summary judgment motion, Plaintiff may not rely on unsupported assertions, but "must come forward with evidence that would be sufficient to support a jury verdict in [her] favor." *Ralkin v. New York City Transit Auth.*, 62 F.Supp.2d 989, 997 (E.D.N.Y. 1999); *see Goenaga v. March of Dimes Birth Defects Found.*, 51 F.3d 14, 18 (2d Cir.1995) ("The party opposing summary judgment may not rely simply on conclusory statements or on contentions that the affidavits supporting the motion are not credible."). Plaintiff must show that a genuine issue of material fact exists that employer's proffered reasons for discharge were false and that her employer was likely motivated by discriminatory purposes. *See Gallo v. Prudential Residential Servs., Ltd.*, 22 F.3d 1219, 1225 (2d Cir.1994). Plaintiff may show the existence of material facts through circumstantial, direct, or statistical evidence. *See id.* Plaintiff may satisfy her burden of persuasion directly by showing that "a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." *Burdine*, 450 U.S. at 256, 101 S.Ct. 1089.[5] Plaintiff merely needs to

---

probationary employee can be dismissed without a hearing and without a statement of reasons in the absence ... that [the] dismissal was for a constitutionally impermissible purpose.").

**4.** "[P]rincipals ... shall be appointed by the board of education, ... for a probationary period of three years. The service of a person appointed to any such positions *may be discontinued at any time during the probationary period.*" N.Y. Educ. Law § 2573(1)(b) (McKinney 2001) (emphasis added).

**5.** If the employer's motivation for discharging the employee is questionable, "the easier it will be to expose it as a pretext." *Loeb v.*

show that Defendant's alleged reasons for discharge were not the only reasons for such discharge, and that other, discriminatory reasons were "at least one of the motivating factors." *Padilla v. Metro–North Commuter RR.*, 92 F.3d 117, 123 (2d Cir.1996) (quoting *Cronin v. Aetna Life Ins., Co.*, 46 F.3d 196, 203 (2d Cir. 1995)) (internal quotation omitted). However, even though Plaintiff has established a *prima facie* case and has provided sufficient evidence to contradict Defendant's nondiscriminatory purpose, a rational trier of fact may still be able to conclude that Defendant's action was not discriminatory. *See Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 148, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000).[6]

█ In the instant case, Plaintiff has made numerous assertions that the basis for her discharge was motivated by discriminatory purposes. When Plaintiff learned of the Resolution, and when told that her daughters could no longer work in the District's employ, Ms. Trotta ceased working for Defendant and Ms. Negron resigned her non-paying position for the BioFeedback Program. Plaintiff alleges that other employees of the Defendant had children who worked as tutors in the same program that hired her daughter. Those employees the Plaintiff alleges were not fired.

Another of Defendant's proffered explanations for Plaintiff's termination was that Plaintiff required other teachers and administrators to tutor her youngest daughter during school hours. However, the Deputy Superintendent relied on supposi-

tions from teachers who had no connection to Ms. Negron. The only evidence that supports Defendant's allegation is Ms. Wagner's statement that Plaintiff directed her to tutor Ms. Negron. Ms. Wagner submitted her affidavit in support of Defendant about nine months after being appointed probationary principal at another school in Defendant school district.

Plaintiff also stated that non-tenured white Administrators, similarly situated to herself and two other Hispanic female Administrators, were promoted and given extensions to their probationary periods. Plaintiff, on the other hand, was discharged from working in the District altogether even though her performance ratings were "effective" and "very effective" for her two years as a probationary principal. A rational trier of fact could conclude that Defendant treated employees in a non-protected group more favorably than those in the protected group. *See Chambers v. TRM Copy Centers Corp.*, 43 F.3d 29, 37 (2d Cir.1994). Plaintiff has produced sufficient evidence of discriminatory motivation on the part of Defendant and has raised a genuine issue of material fact. Therefore, the trier of fact could find either that Defendants unlawfully discriminated against Plaintiff and Defendants' reasons for Plaintiff's termination are merely pretext or that Plaintiff's proof is insufficient to show discrimination as the reason for her termination. Since all inferences are to be drawn in support of Plaintiff, summary judgment is not appropriate.

*Textron, Inc.*, 600 F.2d 1003, 1012 n. 6 (1st Cir.1979).

**6.** For example, "if the record conclusively revealed some other, nondiscriminatory reason for the employer's decision, or if the plaintiff created only a weak issue of fact as to whether the employer's reason was untrue and ... abundant and uncontroverted independent evidence" existed that the discharge was not a result of discrimination, then summary judgment would be appropriate for the employer. *Reeves*, 530 U.S. at 148, 120 S.Ct. 2097.

## IV. Conclusion

For these reasons, Defendant's motion for summary judgment is DENIED.

It is so ordered.